1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALBERTO GARCIA, | Case No. 1:21-cv-00331-JLT-SAB |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DENYING REQUEST FOR FEES |
| v. | |
| COUNTY OF STANISLAUS, et al., | |
| Defendants. | (ECF Nos. 29, 35–39) |

Currently before the Court is Plaintiff Jose Garcia's ("Plaintiff") motion to compel Defendant County of Stanislaus ("Defendant" or "County")[1] to produce documents in response to Plaintiff's requests for production ("RPD"), set one.  (ECF No. 35.)  The parties filed a joint statement re: discovery disagreement on August 10, 2022 (ECF No. 36.)  On August 24, 2022, the parties appeared before the Court on the motion to compel.  Counsel Sanjay Schmidt and Kennedy Helm appeared by videoconference on behalf of Plaintiff.  Counsel Shanan Hewitt appeared by videoconference on behalf of Defendant.  (See ECF No. 37.)

Having considered the joint statements regarding the discovery disputes, supporting declarations and exhibits attached thereto, the parties' representations at the hearing on the

---

[1] The Court notes multiple defendants have been named in this action.  However, the instant motion to compel pertains only to RPDs propounded on Defendant County of Stanislaus and the County's responses and objections to those RPDs; thus, for purposes of this motion only, any references herein to a singular "Defendant" shall be in reference to the Defendant County of Stanislaus.

1

motions, as well as the Court's file, the Court issues the following order granting in part and denying in part the motion to compel production of documents, and denying Plaintiff's request for monetary sanctions at this time.

# I.

# BACKGROUND

## A.    Factual Background and Pleading Allegations

This is an excessive force action arising from events occurring on January 19, 2019, when Defendant Stanislaus County Sheriff's Deputies deployed a K-9 to bite and hold Plaintiff, resulting in great bodily injury to Plaintiff that required intubation, surgery, and the insertion of hardware and follow-up medical care, including physical therapy.  (ECF No. 15.)

On the night of the incident, Defendant officers were dispatched to Plaintiff's home in response to reports of a male resident firing a handgun multiple times at his residence.  (ECF No. 36 at 3.)  Defendants assert the officers instructed Plaintiff (in English and Spanish) to exit the home but he did not comply.  When Plaintiff finally did exit the home, he did not comply with the officers' commands to keep his hands up, and the officers were not aware of whether Plaintiff had a handgun in his possession.   Based on these circumstances, Defendant Carr deployed his K-9 to assist in apprehending Plaintiff.  (Id. at 3–4.)

Defendants contend the focus of the case is Defendant Carr's deployment of the K-9.  (Id. at 4.)  However, Plaintiff contends the factual disputes include the following: whether Plaintiff posed an immediate threat of bodily harm or death to any of the individual deputies, such that deploying a K-9 was reasonable; whether, before Defendant Carr released his K-9, any of the Defendant officers gave Plaintiff any audible and understandable warnings that a K-9 would be sent to bite and hold him unless he complied with a specific lawful command; whether Defendants' uses of force on Plaintiff while he was already on the ground were reasonable; and whether Defendants acted with a reckless disregard for Plaintiff's rights and safety.  (Id. at 2–3.)

The operative first amended complaint asserts causes of action for civil rights claims under 42 U.S.C. § 1983 for (1) Fourth Amendment violations (unreasonable searches and seizures and excessive force), and (2) supervisory and municipal liability (Monell); and state law

1  claims for (3) violations of the Bane Act (Cal. Civ. Code § 52.1), (4) negligence, (5) battery, and

2  (6) assault.  (ECF No. 15 at 12–24.)

3       Plaintiff's <u>Monell</u> claim is more specifically premised upon the following purported

4  customs, policies, practices and/or procedures of Defendant Stanislaus County: (a) to use or

5  tolerate the use of excessive force and/or unjustified force, including the use of K-9s specifically

6  and the application of force generally; (b) to engage in or tolerate unreasonable seizures; (c) to

7  fail to institute, require, and enforce proper and adequate training, supervision, policies, and

8  procedures concerning the use of force, seizures, the use of physical arrest tactics, and the use of

9  K-9s; (d) to tolerate/perpetuate the policy of "hurt a person – charge a person"; (e) to cover up

10  violations of constitutional rights by failing to properly investigate and/or evaluate complaints or

11  incidents of unlawful seizures, excessive force, dishonesty and other law enforcement

12  misconduct, and encouraging officers to fail to file complete and accurate police reports or file

13  false reports; (f) to allow or encourage a "code of silence" among law enforcement officers; (g)

14  to use or tolerate inadequate, deficient, and improper procedures for handling, investigating, and

15  reviewing complaints of officer misconduct, including claims made under California

16  Government Code 910 et seq.; and (h) to fail to have and enforce necessary/appropriate/lawful

17  policies, procedures, and training programs to prevent or correct various officer misconduct.  (<u>Id.</u>

18  at 14–15.)

19          **B.      Procedural Background and Discovery Dispute**

20       Plaintiff initiated this action against Defendants County of Stanislaus, Richard Johnson,

21  Jessue Corral, Wade Carr, Joshua Sandoval, and Thomas Letras on March 4, 2021.  (ECF No. 1.)

22  He filed a first amended complaint on May 26, 2021.  (ECF No. 15.)  A scheduling order issued

23  on September 28, 2021.  (ECF No. 24.)

24       Plaintiff served Defendants with RPD, set one on June 18, 2021.  (Helm Decl. ¶ 7, ECF

25  No. 36-1.)  On July 7, 2021, the Court entered the parties' stipulation and protective order for

26  confidential documents.  (ECF No. 18.)

27       On August 27, 2021, Defendants served responses and documents, but produced redacted

28  documents, withheld documents as indicated in a privilege log, and failed to produce any training

1    documents responsive to RPF No. 7.  (Helm Decl. ¶ 9; ECF No. 36-3.)

2        On March 25, 2022, counsel for Plaintiff, Mr. Helm, sent defense counsel, Ms. Hewitt

3    and Mr. Janof a meet and confer letter regarding the redacted and withheld documents.  (Helm

4    Decl. ¶ 10.)

5        On April 22, 2022, Messrs. Helm and Janof met and conferred via Zoom for over an hour

6    to discuss Defendants' responses and document production in response to Plaintiff's RPDs, set

7    one.  (Id. at ¶ 11.)

8        On May 10, 2022, Mr. Helm sent Mr. Janof a follow-up email about producing the

9    documents in Defendants' privilege log and other documents discussed during their April 22

10   meet and confer videoconference call.  (Id. at ¶ 12.)

11       Between May 10 and June 8, 2022, Defendants produced an amended privilege log and

12   amended responses that included unredacted copies of previously produced documents, still

13   redacted copies of previously produced documents, some previously unproduced documents, and

14   several documents that were not bates stamped.  (Id. at ¶¶ 13–16; ECF No. 36-4.)

15       On June 16, 2022, Mr. Helm met and conferred again with Mr. Janof, about responses to

16   RPDs, but Mr. Janof could not confirm that Defendants would be producing personnel file

17   documents, Internal Affairs documents, or the County Claim Investigation Report.  (Helm Decl.

18   ¶ 17.)

19       On June 27, 2022, Plaintiff filed his a notice-only of motion to compel.  (ECF No. 29.)

20   The hearing was set for August 10, 2022.  (See ECF No. 30.)  Plaintiff also indicates Mr. Helm

21   attempted to engage in one final meet and confer call before proceeding on the motion to

22   compel, but defense counsel ultimately determined such call would be unproductive and

23   therefore declined.  (Helm Decl. ¶¶ 20–24, 26.)

24       On July 14, 2022, Defendants served amended responses to Plaintiff's RPD set one, with

25   an amended privilege log, producing approximately 300 additional documents.  (ECF No. 36 at

26   2; ECF No. 36-4; see also Helm Decl. ¶ 21.)  The amended responses pertain only to RPD Nos.

27   4, and 6.  (See ECF No. 36-4 at 2–6.)  Plaintiff contends the additionally-produced documents

28   were mostly irrelevant.  (ECF No. 36 at 2.)  Defendant indicated on July 18, 2022, that it would

1    not provide further documents listed on the privilege log, including numbers 6, 8–16, 29, 30, and

2    33.

3          On July 28, 2022, the hearing was dropped from calendar because the parties failed to

4    timely file their joint statement of discovery dispute, as required by Local Rule 251(a).[2]  (ECF

5    No. 33.)  That same day, Plaintiff re-noticed the motion to compel, setting the hearing date for

6    August 24, 2022.  (ECF No. 35.)

7          On August 10, 2022, the parties timely filed their joint statement of discovery dispute.

8    (ECF No. 36.)  In the parties' joint statement, Plaintiff indicates he seeks to compel production

9    of the documents related to RPD Nos. 1(a)–(l), 3, 4, 6, and 7.  (Id. at 2.)  Defendants counter that

10   County has provided over 1,670 pages of documents, subject to privileges concerning: (1)

11   documents containing personal and private information in the Defendant officers' background

12   files, (2) nine unrelated internal affairs ("IA") investigations pertaining to the Defendant

13   Officers, and (3) the County Claim Investigation Report prepared in anticipation of litigation at

14   the request of the County's claims and insurance manager and provided to County Counsel and

15   defense counsel.  (Id. at 4.)

16         On August 24, 2022, the parties appeared via Zoom videoconference.  Defendants were

17   ordered to provide the IA investigations by August 26, 2022 for in camera review.  The

18   remainder of the parties' arguments were taken under submission.

19                                          **II.**

20                                **LEGAL STANDARDS**

21   **A.    Discovery**

22         Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery

23   "regarding any nonprivileged matter that is relevant to any party's claim or defense and

24   proportional to the needs of the case, considering the importance of the issues at stake in the

25   action, the amount in controversy, the parties' relative access to relevant information, the parties'

26   resources, the importance of the discovery in resolving the issues, and whether the burden or

27   _____

28   [2] Meanwhile, on July 11, 2022, the parties submitted a stipulated motion to modify the discovery and dispositive motion filing deadlines in the schedule, which the Court granted.  (ECF Nos. 31, 32.)

expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it

would be without the evidence; and (b) the fact is of consequence in determining the action."

Fed. R. Evid. 401.

"Information within this scope of discovery need not be admissible in evidence to be

discoverable," id.; moreover, "[t]he relevance standard is extremely broad, especially in civil

rights excessive force cases." McCoy v. City of Vallejo, No. 2:19-cv-1191-JAM-CKD, 2021

WL 6127043, at *4 (E.D. Cal. Dec. 28, 2021) (citations omitted).  Nonetheless, relevancy alone

is not sufficient to obtain discovery; rather, "the discovery requested must also be proportional to

the needs of the case." Centeno v. City of Fresno, No. 1:16–cv–653 DAD SAB, 2016 WL

7491634, at *4 (E.D. Cal. Dec. 29, 2016).  For example, the court may limit discovery if it is

"unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive"; or if the party who seeks discovery "has had

ample opportunity to obtain the information by discovery"; or "if the proposed discovery is

outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"The party seeking to compel discovery has the burden of establishing that its request

satisfies the relevancy requirements of Rule 26(b)(1)." McCoy, 2021 WL 6127043, at *4

(citations omitted).  "Thereafter, the party opposing discovery has the burden of showing that the

discovery should be prohibited, and the burden of clarifying, explaining or supporting its

objections." Id.  The Court is vested with broad discretion to manage discovery. Hunt v. Cnty.

of Orange, 672 F.3d 606, 616 (9th Cir. 2012).

As relevant here, Rule 34 of the Federal Rules of Civil Procedure provides that

> A party may serve on any other party a request within the scope of
> Rule 26(b):
>
> (1) to produce and permit the requesting party or its representative
> to inspect, copy, test, or sample the following items in the
> responding party's possession, custody, or control:
>
> (A) any designated documents or electronically stored
> information—including writings, drawings, graphs, charts,
> photographs, sound recordings, images, and other data or data
> compilations—stored in any medium from which information can

be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form. . . .

Fed. R. Civ. P. 34(a).  "The party to whom the request is directed must respond in writing within 30 days after being served. . . ."  Fed. R. Civ. P. 34(b)(2)(B).  A party's response "may state an objection to a requested form for producing electronically stored information.  If the responding party objects to a requested form—or if no form was specified in the request—the party must state the form or forms it intends to use."  Fed. R. Civ. P. 34(b)(2)(D).

### B.    Motions to Compel

Motions to compel are governed by Rule 37.  A party may move for an order compelling production where the opposing party fails to produce documents as requested under Rule 34.  Fed. R. Civ. P. 37(a)(3(B)(iv).  Rule 37 provides in pertinent part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
>
> **(1) In General.** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37 (emphasis in original).  Rule 37 states that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  The party opposing the discovery bears the burden of resisting disclosure.  Bryant v. Armstrong, 285 F.R.D. 596, 600 (S.D. Cal. 2012).

A party "who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . as ordered by the court."  Fed. R. Civ. P. 26(e)(1)(B).  If a party fails to do so, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions,

1    including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)."  Fed. R. Civ. P. 37(c)(1)(A)–(C).

2    **C.    Privilege Log**

3    Rule 26(b)(5) provides that "[w]hen a party withholds information otherwise

4    discoverable by claiming that the information is privileged or subject to protection as trial-

5    preparation material, the party must: . . . (i) expressly make the claim; and . . . (ii) describe the

6    nature of the documents, communications, or tangible things not produced or disclosed . . . in a

7    manner that, without revealing information itself privileged or protected, will enable other parties

8    to assess the claim."  The party asserting the privilege or protection from disclosure bears the

9    burden of proving the applicability of the privilege or protection to a given set of documents or

10   communications.  See, e.g., In re Grand Jury Investigation, 974 F.2d 1068, 1070 (9th Cir.

11   1992); Kandel v. Brother Int'l Corp., 683 F. Supp. 2d 1076, 1084 (C.D. Cal. 2010).  A party's

12   "[f]ailure to provide sufficient information may constitute a waiver of the privilege."  Ramirez v.

13   Cnty. of L.A., 231 F.R.D. 407, 410 (C.D. Cal. 2005).

14   One common method of expressing a claim of privilege or other protection from

15   disclosure is use of a privilege log.  See, e.g., In Re Grand Jury Investigation, 974 F.2d at

16   1071.  Consistent with Rule 26(b)(5), the requisite detail for inclusion in a privilege log generally

17   consists of a description of responsive material withheld, the identity and position of its author,

18   the date it was written, the identity and position of all addressees and recipients, the material's

19   present location, and specific reasons for its being withheld, including the privilege invoked and

20   grounds thereof.  See id.;[3] see also U.S. v. Constr. Prod. Rsch., Inc., 73 F.3d 464, 473 (2d Cir.

21   1996).  However, the format in which the requisite information is provided is not dispositive, see

22   Friends of Hope Valley v. Frederick Co., 268 F.R.D. 643, 651 (E.D. Cal. 2010), so long as the

23   description of "the nature of the … things not produced or disclosed" is sufficient to "enable

24   other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).  To evaluate that description, a

25   court considers, among other things, "the degree to which the objection or assertion of privilege

26   ---
27   [3] In Grand Jury Investigations, the Ninth Circuit cited with approval a privilege log that "identified (a) the attorney
     and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have
     received or sent the document, (d) all persons or entities known to have been furnished the document or informed of
28   its substance, and (e) the date the document was generated, prepared, or dated."  In Re Grand Jury Investigation, 974
     F.2d at 1071.

1    enables the litigant seeking discovery and the court to evaluate whether each of the withheld

2    documents is privileged." See Burlington N. & Santa Fe Ry. v. U.S. Dist. Ct., 408 F.3d 1142,

3    1149 (9th Cir. 2005).  Thus, at a minimum, a party must offer "some information about the

4    content of the allegedly privileged material." Id. at 1148.  Merely the elements or definitions of

5    a privilege does not constitute a sufficient description.  See Mollica v. Cnty. of Sacramento, No.

6    2:19-cv-02017-KJM-DB, 2022 WL 317004, at *3 (E.D. Cal. Feb. 2, 2022) (describing withheld

7    document as "confidential inter-department correspondence" was insufficient); Morgan Hill

8    Concerned Parents Ass'n v. Cal. Dep't of Educ. (Morgan Hill), No. 11-3471, 2017 WL 445722,

9    at *9 (E.D. Cal. Feb. 2, 2017) (privilege log describing withheld document as "communication

10   made in confidence for the purpose of giving or obtaining legal advice" was inadequate for court

11   to "assess the claim" of privilege because it merely repeated the definitions of attorney client

12   materials).

13        **D.    Official Information Privilege**

14        "Federal common law recognizes a qualified privilege for official information." Sanchez

15   v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) ("Government personnel files are

16   considered official information.").  "To determine whether the information sought is privileged,

17   courts must weigh the potential benefits of the disclosure against the potential disadvantages.  If

18   the latter is greater, the privilege bars discovery." Edwards v. City of Vallejo, No. 2:18-cv-2434

19   MCE AC, 2019 WL 3564168, at *3 (E.D. Cal. Aug. 6, 2019) (quoting Sanchez, 936 F.2d at

20   1033–34).  However, before a court will engage in this balancing of interests, the party asserting

21   the privilege must properly invoke it. Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal.

22   1995).

23        In order to invoke the official information privilege, "[t]he claiming official must 'have

24   seen and considered the contents of the documents and himself have formed the view that on

25   grounds of public interest they ought not to be produced' and state with specificity the rationale

26   of the claimed privilege." Kerr v. U.S. Dist. Ct. for N. Dist. of Cal., 511 F.2d 192, 198 (9th Cir.

27   1975).  The party invoking the privilege must at the outset make a "substantial threshold

28   showing" by way of a declaration or affidavit from a responsible official with personal

knowledge of the matters to be attested to in the affidavit.   <u>Soto</u>, 162 F.R.D. at 613
(citing <u>Kelly v. City of San Jose</u>, 114 F.R.D. 653, 669 (N.D. Cal. 1987)).

> The affidavit must include: (1) an affirmation that the agency
> generated or collected the material in issue and has maintained its
> confidentiality; (2) a statement that the official has personally
> reviewed the material in question; (3) a specific identification of
> the governmental or privacy interests that would be threatened by
> disclosure of the material to plaintiff and/or his lawyer; (4) a
> description of how disclosure subject to a carefully crafted
> protective order would create a substantial risk of harm to
> significant governmental or privacy interests, and (5) a projection
> of how much harm would be done to the threatened interests if
> disclosure were made.

<u>Id.</u> (citing <u>Kelly</u>, 114 F.R.D. at 670 ).   A strong affidavit would also describe how the plaintiff
could acquire information of equivalent value from other sources without undue economic
burden.   <u>Noble v. City of Fresno</u>, No. 1:16-cv-01690-DAD-BAM, 2018 WL 1381945, at *3
(E.D. Cal. Mar. 19, 2018) (citing <u>Kelly</u>, 114 F.R.D. at 670).   If a party has submitted a sufficient
affidavit, then the court will order an *in camera* review of the material and balance each parties'
interests.   <u>Id.</u> (citing <u>Kelly</u>, 114 F.R.D. at 671).   "If the court concludes that a defendant's
submissions are not sufficient to meet the threshold burden, it will order disclosure of the
documents in issue."   <u>Soto</u>, 162 F.R.D. at 613.

### E.    Attorney-Client Privilege

The purpose of the attorney-client privilege is "to encourage full and frank
communication between attorneys and their clients and thereby promote broader public interests
in the observance of law and administration of justice.   The privilege … rests on the need for the
advocate and counselor to know all that relates to the client's reasons for seeking representation
if the professional mission is to be carried out."   <u>Upjohn Co. v. U.S.</u>, 449 U.S. 383, 389 (1981)
(internal citations omitted).

As noted by the Ninth Circuit, "[i]ssues concerning application of the attorney-client
privilege in the adjudication of federal law are governed by federal common law."   <u>U.S. v.
Ruehle</u>, 583 F.3d 600, 608 (9th Cir. 2009) (quoting <u>U.S. v. Bauer</u>, 132 F.3d 504, 510 n. 4
(1997)); <u>see also</u> <u>U.S. v. Blackman</u>, 72 F.3d 1418, 1423 (9th Cir. 1995) ("[S]ince the adoption of
the Federal Rules of Evidence, courts have uniformly held that federal common law of privilege,

not state law applies." (citations omitted)).  Thus, the mere "fact that a person is a lawyer does not make all communications with that person privileged."  Ruehle, 583 F.3d at 607 (citations omitted.)  Rather, "[t]he attorney-client privilege applies when (1) legal advice is sought (2) from a professional legal advisor in his capacity as such, and (3) the communications relating to that purpose (4) are made in confidence (5) by the client."  Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (citing Admiral Ins. v. U.S. Dist. Ct., 881 F.2d 1486, 1492 (9th Cir. 1989), and In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977).

"The party asserting the privilege bears the burden of establishing each element."  Bruno v. Equifax Info. Servs., LLC, No. 2:17-cv-327-WBS-EFB, 2019 WL 633454, at *4 (E.D. Cal. Feb. 14, 2019) (citing Ruehle, 583 F.3d at 608).  Importantly, "[a] party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication."  Ruehle, 583 F.3d at 607 (emphasis in original) (citations omitted).  As stated by the Ninth Circuit, the attorney-client privilege "is strictly construed," id. at 607, and should apply "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client."  Tornay v. U.S., 840 F.2d 1424, 1426 (9th Cir. 1988) (citing U.S. v. Osborn, 561 F.2d 1334, 1339 (9th Cir. 1977)).  Indeed, a party invoking the privilege is required by federal law not only to establish the privileged nature of the communications, but also to segregate the privileged information from the non-privileged information.  Ruehle, 583 F.3d at 607 (citing Bauer, 132 F.3d at 507 and Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 503.20[4][b] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2009) (discussing rule that blanket claims of privilege are generally disfavored)).  Where applicable, the privilege protects a communication from discovery so long as the privilege has not been waived.  Admiral Ins., 881 F.2d at 1492.

One of the essential elements of the attorney-client privilege is the intent that the communication be kept confidential.  See U.S. v. Miller, 874 F.2d 1255 (9th Cir. 1989).  Further, a party seeking to withhold discovery based upon the attorney-client privilege must prove that all of the communications it seeks to protect were made "**primarily** for the purpose of generating legal advice."  McCaugherty v. Siffermann, 132 F.R.D. 234, 238 (N.D. Cal. 1990) (emphasis in

original).  While materials transmitted between nonlawyers that reflect matters about which the client intends to seek legal advice—such as notes a client would make to prepare for a meeting with her lawyer, U.S. v. Chevron Texaco Corp., 241 F. Supp. 1065, 1077 (N.D. Cal. 2002), courts have consistently refused to apply the privilege to information that the client intends or understands may be conveyed to others.  See, e.g., In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984); U.S. v. Tellier, 255 F.2d 441, 447 (2nd Cir. 1957), cert. denied, 358 U.S. 821 (1958); U.S. v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976), cert. denied, 426 U.S. 952 (1976); U.S. v. Cote, 456 F.2d 142, 144 (8th Cir. 1972); Wilcoxon v. U.S., 231 F.2d 384, 386 (10th Cir. 1955), cert. denied, 351 U.S. 943 (1956); S. Film Extruders, Inc. v. Coca–Cola Co., 117 F.R.D. 559, 562 (M.D.N.C. 1987).  This refusal is not based upon a finding of waiver of the privilege due to disclosure to third parties.  Rather, courts find that the privilege never attached to the communications at all.

Whether or not a given communication is "confidential" within the meaning of the privilege is determined from the perspective of the client.  U.S. v. Moscony, 927 F.2d 742, 751–52 (3rd Cir. 1991), cert. denied, 501 U.S. 1211 (1991); U.S. v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 28 (5th Cir. 1989).  The client's expectation of confidentiality, however, must be reasonable.  Bay State Ambulance, 874 F.2d at 28; Moscony, 927 F.2d at 752; Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984).   So, for example, a claim of confidentiality may be defeated where the client knowingly makes the communication in the presence of a third party.   U.S. v. Rockwell Int'l, 897 F.2d 1255, 1265 (3rd Cir. 1990) ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed.").  Thus, the decisive inquiry is "whether the client reasonably understood the conference to be confidential."   Kevlik, 724 F.2d at 849 (quoting McCormick on Evidence § 91 at 189 (1972)); U.S. v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991), cert. denied, 502 U.S. 1005 (1991).

Furthermore, the party asserting the attorney-client privilege must prove it has not waived the privilege.  Admiral Ins., 881 F.2d at 1492; U.S. v. Landof, 591 F.2d 36, 38 (9th Cir. 1978). Voluntary disclosure of a privileged communication to a third person destroys attorney-client

1    confidentiality and constitutes a waiver of the privilege.  Clady v. Cnty. of L.A., 770 F.2d 1421,

2    1433 (9th Cir. 1985), cert. denied, 475 U.S. 1109 (1986); Weil v. Inv./Indicators, Rsch. &

3    Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981); U.S. v. El Paso Co., 682 F.2d 530, 539–41 (5th Cir.

4    1982), cert. denied, 466 U.S. 944 (1984); Cal. Evid. Code § 912(a) (a party waives the attorney-

5    client privilege if she "has disclosed a significant part of the communication or has consented to

6    such disclosure made by anyone.").  Furthermore, "[a] party may waive a privilege when that

7    party's claims put privileged information at issue."  Speaker ex rel. Speaker v. Cnty. of San

8    Bernardino, 82 F. Supp. 2d 1105, 1117 (C.D. Cal. 2000) (citing Home Indem. Corp. v. Lane

9    Powell Moss & Miller, 43 F.3d 1322, 1326 (9th Cir. 1995) (applying rule to attorney/client

10   privilege)).  And, as previously noted, "[w]here communications between a client and attorney

11   have been disclosed to a third party, the burden is on the party asserting the privilege to show

12   that it applies despite that disclosure."  Anderson v. SeaWorld Parks & Ent., Inc., 329 F.R.D.

13   628, 632 (N.D. Cal. 2019).

14        **F.    Work Product Doctrine**

15        The work product doctrine is not a privilege but a qualified immunity that "protects from

16   discovery in litigation 'mental impressions, conclusions, opinions, or legal theories of a party's

17   attorney' that were 'prepared in anticipation of litigation or for trial.' "  ACLU of N. Cal. v. U.S.

18   Dep't of Justice, 880 F.3d 473, 483 (9th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(3)); U.S. v.

19   Sanmina Corp., 968 F.3d 1107, 1119 (9th Cir. 2020); see also Miller v. Pancucci, 141 F.R.D.

20   292, 303 (C.D. Cal. 1992).  It extends to investigators or agents working for attorneys, provided

21   that the documents were created in anticipation of litigation.  Sanmina Corp., 968 F.3d at 1121;

22   see also U.S. v. Nobles, 422 U.S. 225, 239 (1975).   The doctrine was  first  recognized

23   in Hickman v. Taylor, 329 U.S. 495 (1947), now codified in Federal Rule of Civil Procedure

24   26(b)(3). ACLU, 880 F.3d at 483.  "As Hickman recognized, shielding from discovery materials

25   prepared 'with an eye toward the anticipated litigation' protects the integrity of adversarial

26   proceedings by allowing attorneys to prepare their thoughts and impressions about a case freely

27   and  without  reservation."   Id. at 484 (quoting Hickman, 329 U.S. at 498).   Rule 26(b)(3)

28   provides, in part, that:

1

2

3

4

5

> (A) Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

6

7

8

9

10

Thus, "to qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial and (2) they must be prepared by or for another party or by or for that other party's representative." In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf), 357 F.3d 900, 907 (9th Cir. 2004) (citing In re Cal. Pub. Utils. Comm'n, 892 F.2d 778, 780–81 (9th Cir. 1989)).

11

12

Elaborating on the "in anticipation of litigation" element, the Ninth Circuit has held the doctrine may be extended to "dual-purpose" documents under the "because of" test:

13

14

15

16

17

18

19

20

21

> a document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation."
>
> …
>
> The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]"

22

23

24

Id. at 907–08 (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024 (2d ed. 1994)) (adopting "because of" test as discussed in U.S. v. Adlman, 134 F.3d 1194–95 (2nd Cir. 1998)).

25

26

27

28

"When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated." Id. at 908. Thus, in considering the "totality of the circumstances," the court may not evaluate only one motive that contributed to a document's preparation; it must

consider all of the circumstances surrounding the document's preparation.  Id.; see also U.S. v. Richey, 632 F.3d 559, 567–68 (9th Cir. 2011) (in tax case, finding district court erred in concluding appraisal report was prepared in anticipation of litigation, where defendants would have been required to attach it to their tax return to qualify for any charitable donation and they provided no evidence that the report would have been prepared differently in the absence of prospective litigation).

In Torf, for example, the subject company hired an attorney after learning that the federal government (EPA) was investigating it for criminal wrongdoing.  Torf, 357 F.3d at 905, 909. The attorney hired a third party who prepared documents, at the attorney's direction, which served dual purposes of both assisting the attorney in preparing the company's defense and providing environmental advice on the cleanup.  Id. at 909.  The Ninth Circuit concluded the documents were protected by the work product doctrine because being investigated for criminal wrongdoing was a circumstance "virtually necessitating legal representation" and "taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole."  Id. at 908–10 (the attorney hired the third party "because of [the company]'s impending litigation and [the third party] conducted his investigations because of that threat.").

On the other hand, in Robinson v. Cnty. of San Joaquin, an Eastern District of California court determined a third-party investigation report into the plaintiff's Title VII claims of wrongful termination and failure to promote based on racial discrimination and retaliation did not constitute work product, despite being created at the direction of county counsel.  Robinson, No. 2:12-cv-2783 MCE GGH PS, 2014 WL 2109942, at *3 (E.D. Cal. May 20, 2014).  In Robinson, county counsel initiated an investigation in response to receipt of an anonymous complaint, which made accusations pertaining to the San Joaquin County Employment and Economic Development Department, at which the plaintiff had previously worked.  A third-party consultant was retained to perform the investigation and provide a report to county counsel, who defined the scope of the investigation.  This included interviews of 9–12 persons named in the anonymous complaint.  In determining the investigative report was discoverable, the court

1   reasoned, "it is not necessarily true, or even probable, that litigation would have been anticipated

2   from one anonymous complaint.  The report could have been sought to remedy the matter

3   internally as part of the County's own employment procedures to improve its weaknesses, for

4   example.  The County has not shown otherwise … this is not the situation where an employee

5   who was terminated, and who had threatened litigation, made the complaint … the draft report

6   itself does not reflect the County's strategies or legal theories in any respect.  Rather, it was

7   created by the consulting firm which was tasked by County Counsel with conducting a

8   preliminary investigation and presenting its findings."  Robinson, 2014 WL 2109942, at *3.

9          In addition, the Court notes many Ninth Circuit courts have been cautious in their

10  application of the work product doctrine as it specifically relates to excessive force cases against

11  police officers and departments.  See Edwards, 2019 WL 3564168, at *3 ("[P]rivileges are to be

12  construed especially narrowly when asserted by officers or cities in federal civil rights

13  actions.") (citation omitted).  In Kelly v. City of San Jose, for example, a Northern District of

14  California court expressly commented that, "[s]ince police departments are under an affirmative

15  duty, in the normal course of serving their public function, to generate the kind of information at

16  issue here [including files generated in investigating the plaintiff's alleged offence, IA

17  investigation files, and forms used by the police department in recording and processing

18  complaints by citizens against police officers], the polices that inspire the work product doctrine

19  are wholly inapplicable."  Kelly, 114 F.R.D at 655, 659 (commenting on the "dangers" of

20  importing doctrines developed in different government settings to the kinds of information

21  generated by police departments).

22         Furthermore, similar to the waiver of the attorney-client privilege, the Ninth Circuit has

23  held "a litigant can waive work-product protection to the extent that he reveals or places the

24  work product at issue during the course of litigation."  Sanmina Corp., 968 F.3d at 1119 (citing

25  Nobles, 422 U.S. at 239).  In Nobles, for example, "a criminal defendant's decision to present his

26  defense investigator as a witness waived work-product privilege over the investigator's report

27  'with respect to matters covered in his testimony.' "  Id. (quoting Nobles at 236).  "Similarly,

28  in Hernandez v. Tanninen, 604 F.3d 1095, 1100 (9th Cir. 2010), a party's production of an

1   attorney's notes in support of his opposition to a motion constituted a waiver of work-product

2   privilege over the subject matter of the notes disclosed." Id.  However, in general, work-product

3   protection is not as easily waived as the attorney-client privilege. Id. at 1120.

4        Bottom line, the party who is asserting the work product privilege bears the burden of

5   proving that the materials withheld meet the standards established to be qualified as work

6   product. Garcia v. City of El Centro (Garcia), 214 F.R.D. 587, 591 (S.D. Cal. 2003).  If the

7   privilege is found to apply, then the burden shifts to the party seeking discovery to show "that it

8   has substantial need for the materials to prepare its case and cannot, without undue hardship,

9   obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(B)(ii); Garcia, 214

10  F.R.D. at 591.  However, once a party makes this substantial showing, "the balance of equities

11  shifts in favor of disclosure of trial preparation materials." Admiral Ins. Co., 881 F.2d at 1494.

12  If a court orders production of such materials, "it must protect against disclosure of the mental

13  impressions, conclusions, opinions, or legal theories of a party's attorney or other representative

14  concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

15                                      **III.**

16                                  **DISCUSSION**

17       Plaintiff seeks to compel production of various items withheld and identified in County's

18  amended privilege log, and seeks payment of reasonable expenses in bringing this motion.

19       **A.   Production Requests**

20       In the parties' joint statement, Plaintiff indicates he seeks to compel production of the

21  documents related to RPD Nos. 1(a)–(l), 3, 4, 6, and 7.  (ECF No. 36 at 2.)  At the August 24,

22  2022 hearing on the motion, however, Plaintiff acknowledged Defendants had produced

23  additional, supplemental documents after the filing of the joint statement, and that Defendants

24  had provided additional information about certain production requests for the first time in their

25  portion of the joint statement which potentially mooted some of the arguments asserted in

26  Plaintiff's motion to compel and/or enabled Plaintiff to narrow the scope of his requests.

27       At the hearing, Plaintiff confirmed he seeks production of documents and things from the

28  following areas: (1) Defendants' emails related to the incident, as responsive to RPD No. 1(g)

                                        17

1    and identified on the amended privilege log at items 30, 31, and 34; (2) the August 3, 2019

2    County Claim Report responsive to RPD No. 3 and identified on the amended privilege log at

3    item 6; (3) the Internal Affairs ("IA") investigations responsive to RPD No. 4 and identified on

4    the amended privilege log at items 9, 10, 12, and 14; (4) the personnel files of the Defendant

5    Officers responsive to RPD No. 6 and identified on the amended privilege log at items 1–5; and

6    (5) training records as requested pursuant to RPD No. 7.  Plaintiff's motion to compel thus seeks

7    production only of items that have been identified on County's amended privilege log, on the

8    basis that either the privilege log is deficient, or County failed to establish the privileges asserted

9    apply.

10          The Court evaluates each challenge in turn.

11          1.      RPD No. 1(a)–(l): Emails

12          Plaintiff's RPD No. 1 seeks "any and all DOCUMENTS regarding the INCIDENT

13   described in the First Amended Complaint and any investigation and/or follow-up to the

14   INCIDENT.  (Id. at 5.)  In addition to this request, the RPD seeks production of twelve specific

15   categories, identified as sub-parts (a) through (l).  (Id. at 5–6.)  As relevant to the instant motion,

16   Subpart (g) seeks "all electronically stored data and information, including but not limited to

17   emails, social media messages and/or posts and/or comments, text messages, cellular phone

18   call/missed call entries and times, in-car computer data, digital photographs and/or recordings,

19   and voice mail messages."  (Id. at 6.)

20          County's objections and responses are asserted with respect to RPD No. 1 and all

21   subparts:

22          Objection. Responding party objects to this request on the basis
             that it is [1] vague, [2] ambiguous, [3] overbroad, and [4]
23          compound. Further, the requests relating to "Stanislaus Police
             Department" and "police reports" [5] are not reasonably calculated
24          to lead to the discovery of relevant, admissible evidence. The
             responding party further objects on the basis that the request may
25          call for the disclosure of information subject to the [6] attorney-
             client privilege and/or [7] attorney work product doctrine in
26          violation of Fed. R. Civ. P. 26(b)(3)(A). Further, the request calls
             for disclosure of confidential information protected from
27          disclosure by [8] Official Information Privilege; *Sanchez v. City of
             Santa Ana*, 936 F.2d 1027 (9th Cir. 1990); [9] Federal and Cal.
28          Constitutional Right to Privacy; [10] § Cal. Pen. Code 832.7, Cal.

18

Evid. Code §§ 1043,1045. Subject to and without waiving the foregoing objections, responding party responds as follows:

See attached Privilege Log. Responding party shall comply with this request subject to the stipulated protective order agreed upon by the parties.

In addition, responding party will produce all non-privileged responsive documents. See the enclosed flash drive with responsive documents contained within the following folder: RPD No. 1.

(Id. at 6–7 (brackets in original).)   County did not produce amended responses for the emails sought under this section, but did provide an amended privilege log addressing the documents. The amended privilege log indicates items 16–34 are emails responsive to RPD No. 1 subpart (g), and that these emails were withheld based on the attorney-client and work product doctrine privileges; the log further indicates the items were properly excluded pursuant to Rule 26(b)(3). (ECF No. 36-4 at 24–29.)

### a.    Parties' Arguments

Plaintiff takes issue with County's general objections and responses to RPD 1, as they apply to the withheld documents identified in the privilege log, and he takes issue with the objections specifically raised in the privilege log with respect to certain withheld emails identified as responsive to subpart (g) of RPD 1 (log items 16–34).  (ECF No. 36 at 7.)  Of these items indicated on the amended privilege log, Plaintiff seeks production of the emails identified at items 30, 31, and 34.   Item 30 is described as an "email chain" of 4 emails, dated July 14, 2012, between Cerina Otero and Casey Hill.  (ECF No. 36-4 at 28.)  Item 31 is described as an "email chain" of 2 emails, dated July 14 through July 19, 2021, between Casey Hill and Edard Cicero, Joellene Schwandt, and Thomas Letras.  (Id.)  Item 34 is simply described as "email," dated July 14, 2021, between Cerina Otero and Joshua Sandoval.  (Id. at 29.)

With respect to County's objections to production of these emails, Plaintiff argues objection [5]  (that the documents "are not reasonably calculated to lead to the discovery of relevant, admissible evidence") inaccurately cites the now-abrogated, pre-2015 Federal Rules Amendment's standard for the scope of discovery and should be overruled.  (ECF No. 36 at 9.)  Plaintiff argues County's privilege log is inadequate to establish the attorney-client privilege

1   (objection [6]), as it does not indicate any of the at-issue email communications were made with

2   an attorney.  (Id. at 9–11.)  Similarly, Plaintiff argues the privilege log is inadequate to invoke

3   the work product doctrine (objection [7]), because it contains no description of the at-issue

4   emails so as to demonstrate they were generated primarily for use in litigation.  (Id. at 11–12.)

5   Plaintiff argues County fails to properly invoke the official information privilege (objection [8])

6   because it did not make the substantial threshold showing in the form of an affidavit containing

7   all five Kelly elements at the time the responses and objections were served on August 27, 2021,

8   and has therefore waived its assertion of the privilege, nor does the privilege log contain

9   sufficient information to determine whether the privilege attaches to log numbers 30, 31, or 34.

10  (Id. at 12–13 (citing Kelly, 114 F.R.D. at 670.)  Plaintiff argues the privilege log does not

11  establish any recognized privacy rights (objection [9]) are implicated; moreover, any privacy

12  concerns should be alleviated by the parties' stipulated protective order entered in this matter.

13  (Id. at 13.)  Finally, Plaintiff argues objection [10], which is based purely on California law,

14  should be overruled because federal law controls questions of privilege in this case.  (Id. at 14.)

15          County does not provide argument in response to Plaintiff's motion with respect to any of

16  its objections, except those based on the attorney-client privilege and work product doctrine

17  (objections [6] and [7]).  However, as to the attorney-client privilege and work product doctrine

18  objections, County provided a supporting declaration which indicates the three email items at

19  issue were created in response to defense counsel's email requesting Sheriff's Department

20  personnel to research and gather the documents requested in Plaintiff's RPD set one, and reflects

21  communications from one employee to the next, carrying out the instructions of defense counsel

22  to obtain the requested records.  (Id. at 16; Hewitt Decl. ¶ 7.)  At the hearing on the motion,

23  County represented the same to the Court on the record.

24          In response to County's declaration and at the hearing, Plaintiff conceded that the at-issue

25  emails are likely privileged; regardless, Plaintiff appears to have withdrawn this argument,

26  noting the emails "need not be produced."  (ECF No. 36 at 15.)  However, Plaintiff argues he is

27  entitled to recover reasonable expenses pursuant to Rule 37(a)(5)(A) for bringing the instant

28  motion, since County's declaration and explanation was not provided until after notice of the

1   motion was filed, and on the parties' latest deadline to exchange their portions of the joint

2   statement of discovery dispute.  (See id.)

3   **b.   Analysis and Ruling**

4   The Court notes County's privilege log asserts the objection of work product doctrine and

5   superficially may comply with Rule 26(b).  Further, accepting the averments in County's

6   declaration and representations at the hearing as true, the Court is satisfied County has

7   established the work product doctrine applies to the at-issue emails.  In re Grand Jury

8   Investigation, 974 F.2d at 1070; Kandel, 683 F. Supp. 2d at 1084.  Communications pertaining to

9   instructions regarding the procuring and producing of responsive discovery documents are

10  plainly prepared in anticipation of litigation or for trial.  Garcia, 214 F.R.D. at 591.  Nor can the

11  Court ascertain any "substantial need" Plaintiff may have for such communications.  Id.; Fed. R.

12  Civ. P. 26(b)(3)(B)(ii).  Furthermore, Plaintiff reaffirmed he no longer seeks these e-mails at the

13  hearing.

14  On this record, Plaintiff's motion as to RPD No. 1(g) is denied as moot.[4]

15  2.   RPD No. 3: County Claim Investigation Report

16  Plaintiff's RPD No. 3 seeks:

17  Any and all DOCUMENTS concerning or at all relevant to any
    formal or informal complaint or investigation made concerning any
18  INVOLVED OFFICER herein and/or the Stanislaus County
    Sheriff's Department, from any source, relating to the INCIDENT,
19  including but not limited to all complaints, records of
    investigation(s), statements from any witness or person
20  interviewed and/or with knowledge concerning the complaint or
    investigation, investigation logs, findings, conclusions, statements
21  (in every format, including written, audiotaped and videotaped),
    photos, all records concerning the disposition of any such
22  complaints, and all records concerning any counseling, training,
    and/or discipline anyone received as a result of any such complaint
23  or investigation.

24  (ECF No. 36 at 17.)  County's response and objections are as follows:

25  Objection.  Responding party objects to this request on the basis
    that it is [1] vague, [2] ambiguous, [3] overbroad, and [4]
26  compound.  The responding party further objects on the basis that

27  _____

28  [4] Having determined the work product doctrine bars production of the at-issue emails, and Plaintiff's motion as to
    these items was withdrawn, the Court declines to consider the remaining objections and arguments asserted thereto.

the request may call for the disclosure of information subject to the [5] attorney-client privilege and/or [6] attorney work product doctrine in violation of Fed. R. Civ. P. 26(b)(3)(A).  Further, the request calls for disclosure of confidential information protected from disclosure by the [7] federal common law official information privilege; [8] state law official information privilege; [9] federal and state constitutional rights of privacy; [10] Cal. Pen. Code § 832.7; Evid. Code §§ 1043,1045; [11] attorney-client privilege; [12] work-product doctrine; and [13] Cal. Gov. Code §§ 6254(b),(k).   Subject to and without waiving the foregoing objections, responding party responds as follows:

See attached Privilege Log.  Responding party shall comply with this request subject to the stipulated protective order agreed upon by the parties.

Responding party will produce all responsive documents.  See the enclosed flash drive with responsive documents contained within the following folder: RPD No. 3.

(Id. (brackets in original).)

At item 6, the amended privilege log identifies a County Claim Investigation Report dated August 3, 2019, as responsive to RPD No. 3, and asserts the privileges of the official information privilege, attorney-client privilege, work product doctrine, Rule 26(b)(3) and Cal. Gov. Code §§ 6254(b), (k).  (ECF No. 36-4 at 20.)

a.      **Parties' Arguments**

Plaintiff takes issue with County's objections as they are asserted, as well as County's invocation of privilege on the log as to the report and seeks production of the report.  (ECF No. 36 at 18–21.)  As before, Plaintiff argues the general objections [1]–[4] (vague, ambiguous, overbroad, compound) are impermissible boilerplate objections.  (Id. at 18.)  Plaintiff argues County's privilege log is inadequate to establish the attorney-client privilege (objections [5], [11]), as it does not indicate any of the at-issue email communications were made with an attorney.  (Id. at 9–11, 18.)  Similarly, Plaintiff argues the privilege log is inadequate to invoke the work product doctrine (objections [6], [12]), because the report appears to have been generated within the normal course of business, in response to and during investigation of Plaintiff's government claims, and was not primarily created in anticipation of litigation.  (Id. at 18–20.)  Plaintiff argues County fails to properly invoke the official information privilege (objection [7]) because it did not make the substantial threshold showing in the form of an

affidavit containing all five <u>Kelly</u> elements, nor was such requirement met at the time the responses and objections were served on August 27, 2021; therefore, County has waived its assertion of the privilege.  Further, Plaintiff argues the privilege log does not contain sufficient information to determine whether the privilege attaches to the report.  (<u>Id.</u> at 12–13, 20.) Plaintiff argues the privilege log does not establish any recognized privacy rights (objection [9]) are implicated; moreover, any privacy concerns should be alleviated by the parties' stipulated protective order entered in this matter.  (<u>Id.</u> at 20.)  Finally, Plaintiff argues objections [8], [10], and [13], which are all based purely on California law, should be overruled because federal law controls questions of privilege in this case.  (<u>Id.</u>)

County provides no response to Plaintiff's arguments with respect to objections [1]–[4], [7]–[10], and [13], other than to declare "many [of the objections] are self-evident."  Instead, electing to "focus[] on the most salient points," County addresses only argument with respect to the attorney-client privilege and attorney work product doctrine, objections [5] and [6] (which are duplicated as an assertion of privilege at [11] and [12]).  (<u>See id.</u> at 21–24.)

At the hearing, the parties similarly only provided argument with respect to the work product doctrine.  These arguments are evaluated *infra*.

**b.   Analysis and Rulings on Objections**

i.   Relevance/Proportionality

As an initial matter, the Court notes it is not entirely satisfied that Plaintiff has advanced sufficient argument to meet his initial burden under Rule 26(b)(1) to show that the report is both relevant and "proportional to the needs of the case," <u>Centeno</u>, 2016 WL 7491634, at *4, as the relevance/proportionality issue is not directly addressed in the joint statement, and was only discussed in general terms by the parties during oral argument for the hearing on the motion.[5]

That is, Plaintiff has not set forth any specific contention that he has a substantial need for the withheld documents and that he would incur undue hardship in obtaining substantially equivalent information, <u>Torf</u>, 357 F.3d at 910, but has only asserted in generalities that the report

---

[5] By contrast, the parties do, at length, discuss the relevance/proportionality issues as they pertain to Plaintiff's request for production of the IA investigation reports identified at items 9, 10, 12, and 14 of the amended privilege log.

is not protected under the work product doctrine because it was created for the purpose of investigating a claim in the ordinary course of its business, and not "with an eye toward litigation," and courts in this district have ordered production in analogous cases.  (ECF No. 36 at 19.)  Plaintiff also reasserts he seeks only the underlying facts identified in the report and not any legal conclusions.

Nevertheless, the report is relevant to the case because it relates directly to the use of force incident that is the subject of this litigation.  Indeed, a number of courts in this district have held that investigative documents regarding excessive force complaints are discoverable.  See, e.g., Grigsby v. Munguia, No. 2:14-cv-0789-GEB-AC-P, 2016 WL 900197, at *4 (E.D. Cal. Mar. 9, 2016) (information uncovered during an investigation of plaintiff's excessive force claim is discoverable), mot. for recon. granted in part, 2016 WL 1461614, at *1 (E.D. Cal. Apr. 14, 2016) (requiring CDCR investigative report to be reviewed in camera before being provided to plaintiff); Parks v. Tait, No. 08-CV-1031-H (JMA), 2009 WL 4730907, at *6 (E.D. Cal. Dec. 7, 2009) (investigative reports regarding plaintiff's excessive force allegations are discoverable).

ii.     Waiver of Arguments re: Objections

As an initial matter, the Court notes County's failure to address and respond to Plaintiff's arguments with respect to the majority of its objections (objections [1]–[4], [7]–[10], and [13]) may be deemed as conceding those arguments.  See Tatum v. Schwartz, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007) ("[Plaintiff] tacitly concedes this claim by failing to address defendants' argument in her opposition.").

On this basis alone, the objections may properly be overruled.  However, the Court also concludes the objections are properly overruled on the merits, for the reasons that follow.

iii.    Boilerplate Objections [1]–[4]

Plaintiff argues the general objections [1]–[4] (vague, ambiguous, overbroad, compound) are impermissible boilerplate objections.  The Court agrees.  See Louen v. Twedt, 236 F.R.D. 502, 505 (E.D. Cal. 2006) (the requesting party "is entitled to individualized, complete responses to each of the requests . . . , accompanied by production of each of the documents responsive to the request, regardless of whether the documents have already been produced.").  The Court

1    admonishes Defendant that boilerplate objections do not suffice, are not well-received by this

2    Court, and will usually be met with boilerplate overrulings.   See, e.g., Fed. R. Civ. P.

3    34(b)(2)(B), (C); Burlington, 408 F.3d at 1149 (boilerplate objections are insufficient to assert a

4    privilege); Paulsen v. Case Corp., 168 F.R.D. 285, 289 (C.D. Cal. 1996) (finding objections of

5    "overbroad, unduly burdensome, unduly redundant to other discovery, oppressive, calls for

6    narrative.   Discovery has only just begun" were general or boilerplate objections, "which are not

7    proper objections."); McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482,

8    1485 (5th Cir. 1990) (objections that requests were overly broad, burdensome, oppressive, and

9    irrelevant were insufficient to meet party's burden to explain why discovery requests were

10   objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.

11   1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to

12   demonstrate why discovery is objectionable).

13          As such, objections [1]–[4] are overruled.

14          iv.     Federal Common Law Official Information Privilege, Objection [7]

15          As noted, Plaintiff argues County fails to properly invoke the official information

16   privilege with respect to the County claims report because it did not provide the required

17   affidavit at the time of production, nor does any subsequently-provided declaration satisfy the

18   Kelly elements.   (ECF No. 36 at 12–13, 20.)

19          County did not submit argument with respect to this privilege in the joint statement, nor

20   did it raise the privilege during oral arguments at the hearing on the motion.   On this basis, the

21   Court may deem County's sole invocation of the privilege as a passing objection to discovery

22   responses and a single phrase entry on the privilege log as a "boilerplate objection," and overrule

23   it as such.   Burlington, 408 F.3d at 1149 (boilerplate objections are insufficient to assert a

24   privilege).

25          Even on the "merits," the Court agrees with Plaintiff that County fails to properly invoke

26   the official information privilege with respect to the report.   First, County's attempted invocation

27   of the privilege is untimely.   A party seeking to invoke the official information privilege must

28   submit the required affidavit "at the time it files and serves its response to the discovery

request…." <u>Noble</u>, 2018 WL 1381945, at *5 (citing <u>Kelly</u>, 114 F.R.D. at 669); <u>see also</u> <u>Miller</u>, 141 F.R.D. at 300 (same); <u>Centeno</u>, 2016 WL 7491634, at *13 (same); <u>Nehad v. Browder</u>, 2016 WL 2745411, at *6 (S.D. Cal. May 10, 2016) (same); <u>cf.</u> <u>Burlington</u>, 408 F.3d at 1149 (rejecting a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30–day time limit); <u>Perez v. U.S.</u>, No. 13cv1417-WQH-BGS, 2016 WL 499025 at *3 (S.D. Cal. Feb. 9, 2016) (declining to find waiver of official information privilege based solely on untimeliness of submission of supporting affidavit).  Here, County did not submit a supporting affidavit until the filing of the joint statement of discovery dispute, after Plaintiff filed the instant motion to compel, and therefore its official information privilege may be deemed waived.

Regardless, the Court finds County's supporting affidavit is also insufficient to make the "substantial threshold showing" required to assert the official information privilege.  County submits a declaration from Karyn Watson, the Claims and Insurance Manager for the County. (ECF No. 36-5.)  Evaluating the Watson declaration against the five <u>Kelly</u> factors, the Court finds the declaration is deficient, as follows: (1) while the declaration indicates the report is "considered confidential by the County," it does not aver that the County has maintained the confidentiality of the document; (2) Ms. Watson indicates she took over the position as Claims and Insurance Manager after her predecessor, Kevin Watson, requested the report be prepared in this matter; Ms. Watson does not aver at any point that she ever personally received or reviewed the at-issue report; (3) the declaration generally states the report is intended to be protected by the attorney work product and attorney-client privilege as a document prepared in anticipation of litigation in response to the filing of a government claim, but it does not identify any specific government or privacy interests that would be threatened by disclosure of the report to Plaintiff; (4) the declaration does not discuss how disclosure, even subject to the parties' stipulated protective order, would "create a substantial risk of harm to significant governmental or privacy interests"; nor does the declaration (5) project what, or how much, harm would be done to the threatened interests if the report was disclosed to Plaintiff.  <u>Kelly</u>, 114 F.R.D. at 670.  Further, while not one of the five enumerated <u>Kelly</u> elements, an affidavit submitted in support of the official information privilege must indicate the declarant is the relevant "agency head."  <u>Soto</u>,

162 F.R.D. at 613; <u>Kelly</u>, 114 F.R.D. at 669.  The Watson declaration does not provide this information, however, nor does Watson describe the scope of her responsibilities, so as to demonstrate she is an appropriate person to author the declaration for the purposes of the privilege invoked here.[6]  In sum, the Watson declaration is wholly insufficient to make the "substantial threshold showing" required to assert the official information privilege with respect to the County Claim Report.

As such, the objection is overruled.

v.      <u>Objections Based on California Law, [8], [10], and [13]</u>

The amended response to RPD No. 3 asserts objections based on the state law official information privilege (objection [8]), California Penal Code § 832.7 and California Evidence Code §§ 1043 and 1045 (objection [10]), and California Government Code 6254(b), (k) (objection [13]).  (ECF No. 36 at 17.)  As Plaintiff correctly notes, "[i]n federal question cases, federal privilege law applies."  <u>N.L.R.B. v. North Bay Plumbing, Inc.</u>, 102 F.3d 1005 (9th Cir. 1996) (citing Fed. R. Evid. 501); <u>see also</u> <u>Kelly</u>, 114 F.R.D. at 655 ("in a civil rights case brought under federal statutes questions of privilege are resolved by federal law … State privilege doctrine, whether derived from statutes or court decisions, is not binding on federal courts in these kinds of cases.") (quoting <u>Heathman v. U.S. Dist. Ct.</u>, 503 F.2d 1032, 1034 (9th Cir. 1974); citing <u>Breed v. U.S. Dist. Ct.</u>, 542 F.2d 1114, 1115 (9th Cir. 1976)).  Furthermore, where—as here—the complaint alleges both substantive federal and state law claims concerning the same alleged conduct, the federal law of privilege controls.  <u>Agster v. Maricopa Cnty.</u>, 422 F.3d 836, 839–40 (9th Cir. 2005).

As the Court has noted, County does not address Plaintiff's arguments with respect to these objections.  Furthermore, in light of the foregoing authority, such objections based on state statutes are unavailing.

---

[6] Citing <u>National Lawyers Guild</u>, the <u>Perez</u> court explained the importance for the supporting affidavit to be authored by the appropriate "agency head": "The [agency head] procedural requirements are designed to ensure that the privileges are presented in a deliberate, considered, and reasonably specific manner … This helps to ensure that the privilege is invoked by an informed executive official of sufficient authority and responsibility to warrant the court relying on his or her judgment."  <u>Perez</u>, 2016 WL 499025 at *3 (quoting <u>Nat'l Laws. Guild v. Att'y Gen.</u>, 96 F.R.D. 390, 396 (S.D.N.Y 1982)) (internal quotation marks and citations omitted).

1    Accordingly, County's objections based on state law privileges are overruled.

2         vi.    Privacy Rights, Objection [9]

3    County generally objects to RPD No. 3 on the basis of "federal and state constitutional

4 rights of privacy."  County did not address privacy rights in the joint statement or at the hearing

5 on the motion.

6         With respect to privacy rights, federal courts recognize a constitutionally-based right of

7 privacy that may be asserted in response to discovery requests.  Soto, 162 F.R.D. at 616.

8 Resolving a claim of privacy rights requires the court to balance the need for the information

9 sought against the privacy right asserted.  Id.  Courts find that the privacy rights of law

10 enforcement records are not inconsequential.  Id.  Courts should generally give some weight to

11 the privacy rights that are protected by state constitutions or statues, Kelly, 114 F.R.D. at 656,

12 however, these rights are balanced against the great weight afforded to federal law in civil rights

13 cases against law enforcement, Soto, 162 F.R.D. at 616.  Furthermore, a protective order that is

14 carefully crafted can minimize the impact of the disclosure.  Id.

15         Here, in the absence of any argument to the contrary, the Court finds any unspecified

16 privacy concerns may be sufficiently alleviated by the stipulated protective order which was

17 entered in this case on July 2, 2021.  (ECF No. 18); see also Kelly, 114 F.R.D. at 666 (holding

18 "the weight of law enforcement's interest [in preventing disclosure of documents containing

19 personal information] drops dramatically ... when imposes a tightly drawn protective order on the

20 disclosure of such material").  Balancing the interests represented here, the Court finds that

21 Plaintiff's need for a report directly related to the subject incident of this lawsuit outweighs the

22 Defendant Officers' privacy interest.

23         For these reasons, County's objection [9] is overruled.

24         vii.    Attorney-Client Privilege, Objections [5], [11]

25         As an initial matter, the Court finds the attorney-client privilege asserted as an objection

26 (objection [5]) is merely asserted in boilerplate fashion.  As such, it is overruled.  Burlington,

27 408 F.3d at 1149 (boilerplate objections are insufficient to assert a privilege).

28         In addition, the amended privilege log appears deficient on its face to invoke the

1   attorney-client privilege with respect to the report (objection [11]).  As Plaintiff correctly notes,

2   the amended privilege log does not, on its face, show any communications between an attorney

3   and client.  Instead, the log reflects the report was authored by Lt. Brandon Kiely and provided to

4   Lt. Micky LaBarbera.  (ECF No. 36-4 at 20.)  As Plaintiff asserts and County concedes, neither

5   identified party is an attorney.  Nor does the log provide any further details from which Plaintiff

6   or the Court could ascertain that the existence of an attorney-client relationship is attached to the

7   report.  While not all communications between an attorney and client may be privileged, Ruehle,

8   583 F.3d at 607,[7] an attorney-client relationship *is* a threshold requirement for the privilege to

9   attach to any communication.  See id. (attorney-client privilege requires both relationship and

10  privileged nature of the communication).

11          The privilege log is also deficient with respect to providing detail of the subject of the at-

12  issue communication to demonstrate the communication was confidential and made for the

13  purpose of seeking legal advice.  Burlington, 408 F.3d at 1148.  Rather, the only information the

14  privilege log provides with respect to item 6—in its entirety—is that the document withheld is a

15  "County Claim Investigation Report," authored by Lt. Brandon Kiely and received by Lt. Micky

16  LaBarbera, currently in possession of defense counsel, and a string cite of purported privileges

17  indicating that the report was withheld on the basis of "Official Information Privilege; Attorney-

18  Client Privilege; Work-Product Doctrine, Fed. R. Civ. P. 26(b)(3); [and] Cal. Gov. Code

19  6254(b), (k)" with zero substantive explanation.  (ECF No. 36-4 at 20); see Bruno, 2019 WL

20  633454, at *4 (rejecting vague proffer in privilege log describing document as "confidential …

21  containing information to facilitate the rendition of legal advice regarding contractual

22  agreements with customers and/or vendors" as insufficient to establish document contained

23  confidential communications made for the purpose of rendering legal advice); Mollica, 2022 WL

24  317004, at *3 (document described as "confidential inter-department correspondence" was

25  insufficient); Morgan Hill, 2017 WL 445722, at *9 (document described as "communication

26  made in confidence for the purpose of giving or obtaining legal advice" was insufficient).  Thus,

27  ─────────────
    [7] See also, e.g., Hickman, 329 U.S. at 508 (attorney-client privilege did not extend to information attorney secured
    from a witness while acting for his client in anticipation of litigation, although the work product doctrine ultimately
28  did protect the information).

1   on its face, the privilege log is insufficient to establish invocation of the attorney-client privilege

2   with respect to the county claim report.

3        Nor does the Court find County has met its burden in the subsequent pleadings or at the

4   hearing on the motion to establish the attorney-client relationship attaches to the report. Ruehle,

5   583 F.3d at 607–08.  County indicates that both the attorney-client privilege and work product

6   doctrine apply to the report; however, it mainly provides discussion with respect to the work

7   product doctrine.  (See generally ECF No. 36 at 21–24.)  Yet the privilege and the doctrine are

8   not interchangeable; nor are the same elements required to invoke their protections.  U.S. v.

9   Nobles, 422 U.S. 225 238 n.11 ("… the work-product doctrine is distinct from and broader than

10  the attorney-client privilege); see also Sanmina Corp., 968 F.3d at 1119–20 (noting "important

11  distinction" between rules governing when attorney-client privilege versus work product doctrine

12  has been waived, "since the two [protections] are designed to accomplish different results.").

13       Importantly, the attorney-client privilege protects *communications*; it does not protect the

14  underlying evidence.   Upjohn Co., 449 U.S. at 395–96 ("A fact is one thing and a

15  communication concerning that fact is an entirely different thing.  The client cannot be

16  compelled to answer the question, 'What did you say or write to the attorney?' but may not

17  refuse to disclose any relevant fact within his knowledge merely because he incorporated a

18  statement of such fact into his communication to his attorney." (internal quotations and citation

19  omitted)).  Here, even if the report contains some confidential attorney-client communications,

20  County may not necessarily withhold the underlying relevant facts and documents.  Id.  Thus,

21  even if County had reliably invoked the privilege as to the report on the face of the privilege log,

22  to the extent County would seek to withhold any underlying information or documents, including

23  data, such privilege claim would also be overruled.  See also In re New Century, No. CV 07-

24  0931 DDP (FMOx), 2009 WL 10691336, at *7 (C.D. Cal. Dec. 7, 2009) ("any document that

25  contains both protected and responsive information shall be redacted to eliminate any reference

26  to attorney-client matters…."); United State v. City of Hesperia, No. 5:19-cv-2298-AB (SPx),

27  2021 WL 5034381, at *6 (C.D. Cal. Jun. 17, 2021) (ordering defendants to produce attachments

28  to privileged emails, unless they could show the attachments were "privileged in their own

1  right," as "attachments to privileged emails are not themselves privileged simply by
2  association.") (citations omitted).

3         At most, County states the report is prepared at the request of the County's Claims and
4  Insurance Manager and "is considered confidential by the County, intended to be protected by
5  the … attorney-client privilege…." (ECF No. 36 at 21; Watson Decl. ¶ 4.)  And County appears
6  to argue, also for the first time, that "the Report is authored by one Sheriff's Department
7  lieutenant … and directed to another lieutenant *and County Counsel*; the Report was provided to
8  the County's Claims and Insurance Manager who requested it be prepared and provided to
9  defense counsel when retained."  (ECF No. 36 at 23 (emphasis added) (citing Watson Decl. ¶ 3;
10 Hewitt Decl. ¶ 9 (stating she received the Aug. 3, 2019 report on Mar. 22, 2021, when she was
11 retained to represent Defendants)).)   With respect to these comments, however, Plaintiff's
12 argument that the contention is untimely raised—particularly in light of the fact that County
13 Counsel is not listed as a recipient of the report in either the original or amended privilege log—
14 and that the belated Watson declaration is conclusory are not without merit.  Indeed, the Court is
15 dismayed that Defendants apparently never provided this information to Plaintiff during their
16 meet and confer discussions, as it may have obviated the necessity for the instant motion to
17 compel proceedings.

18        As the Court has noted, the Ninth Circuit requires the party asserting privilege to
19 establish both existence of the attorney-client relationship *and* the privileged nature of the
20 specific communication.  Ruehle, 583 F.3d at 607.  The Court cannot ascertain from the
21 aforementioned statements that County has met its burden to establish that each of the elements
22 of an attorney-client relationship with respect to the communications contained in the report—
23 namely, that (1) legal advice was sought (2) from a professional legal advisor in his or her
24 capacity as such, and (3) the communications relating to that purpose (4) were made in
25 confidence (5) by the client.  Griffith, 161 F.R.D. at 694; Admiral Ins., 881 F.2d at 1492; In re
26 Fischel, 557 F.2d at 211.

27        To the extent County Counsel was merely one of multiple parties to whom the report was
28 provided, the Court cannot conclude the communications contained in the report were generated

1    with the primary purpose of seeking legal advice from counsel.  McCaugherty, 132 F.R.D. at

2    238; see also Bruno, 2019 WL 633454, at *5 ("Counsel's mere inclusion among the recipients of

3    the initial emails is not sufficient to afford protection under attorney-client privilege."); Phillips

4    v. C.R. Bard, Inc., 290 F.R.D. 615, 630 (D. Nev. 2013) ("[M]erely copying or 'cc-ing' legal

5    counsel, in and of itself, is not enough to trigger the attorney-client privilege.  Instead, each

6    element  of  the  privilege  must  be  met  when  the  attorney-client  privilege  is  being

7    asserted."); Chevron Texaco Corp., 241 F. Supp. 2d at 1075 ("The mere fact that outside counsel

8    was copied with the e-mail will not shield communications not made for the purpose of securing

9    legal advice").  Also noteworthy is the fact that, while County Counsel may have been provided

10   a copy of the report early on, outside counsel did not receive the report until nearly a year later.

11   See id. at 1073–74 (noting the rebuttable presumption that communications between a client and

12   its  outside  counsel  are  made  "for  the  purpose  of  obtaining  legal  advice"  does  not  extend  to

13   communications between a client and in-house counsel, because in-house counsel may serve in

14   either a legal or a business capacity).

15          Nor can the Court ascertain from the County's evidence that it has met its burden to

16   establish no waiver of the privilege (such as by disclosure to a third party, or by communicating

17   to the attorney in the presence of a third party) has occurred.  See Admiral Ins., 881 F.2d at 1492;

18   Landof, 591 F.2d at 38; Anderson, 329 F.R.D. at 632.  The Court acknowledges the "common

19   interest" or "joint defense" doctrine may allow disclosure of communications protected by the

20   attorney-client privilege between parties, without waiver of the privilege, where the disclosure is

21   "necessary to accomplish the purpose for which the legal advice was sought."  Centerline Hous.

22   P'ship I, L.P.-Series 2 v. Palm Communities, No. 8:21-cv-00107-JVS (JDEx), 2021 WL

23   4895746, at *11 (C.D. Cal. Sept. 2, 2021) (discussing Cal. Evid. Code § 912(d)) (citations

24   omitted).  County, however, has not invoked any such doctrine, and the Court declines to

25   consider arguments not asserted by the parties.

26          On this record, the Court cannot conclude the attorney-client privilege was properly

27   invoked by the amended privilege log or applies to the report and the objection is overruled.

28   ///

1              viii.    Work Product Doctrine Objections [6], [12]

2       As an initial matter, the Court finds the work product doctrine asserted as an objection

3  (objection [6]) is merely asserted in boilerplate fashion.  As such, it is overruled.  Burlington,

4  408 F.3d at 1149 (boilerplate objections are insufficient to assert a privilege).  Next, the Court

5  considers the work product doctrine as it is asserted for the privilege log in objection [12].

6              **(a)    Parties' Arguments**

7       Plaintiff argues the privilege log, on its face, does not indicate how the work product

8  doctrine applies to the report.  Further, he argues the work product doctrine does not apply to the

9  report because it was generated during the regular course of business, well in advance of the

10  initiation of the instant lawsuit.  (ECF No. 36 at 11, 18–20.)  To that point, Plaintiff argues the

11  County report does not contain mental impressions of any attorneys; rather, it is a report created

12  solely by County employees, as a fact-finding document.  As such, it is not part of litigation, but

13  instead is a report consistent with the Government Claims Act, the purpose of which is to

14  "provide the public entity sufficient information to enable it to adequately investigate claims and

15  to settle them, if appropriate, without the expense of litigation."  (Id. at 19.)  Further, Plaintiff

16  argues cases from this District have persuasively found the work product doctrine does not apply

17  to reports created under similar circumstances, and this Court should adopt that reasoning and

18  find the work product doctrine does not apply to a government-code claim investigation report.

19       At the hearing on the motion, Plaintiff reiterated his position that the report is performed

20  "as a matter of course," for a number of reasons, not just litigation.  Further, Plaintiff maintains

21  he only seeks the "facts and raw data from the investigation, like interviews and findings," and

22  not any conclusions regarding potential legal liability.

23       Defendant asserts the report was created at the request of the County Claims and

24  Insurance Manager, who then provided the report to defense counsel when retained.  Defendant

25  suggests the County's procedure here dictates that the instant report—as with all County Claims

26  reports generated after the filing of a government claim—was created in anticipation of

27  litigation:

28              When the Stanislaus County's Claims and Insurance Manager

> receives a government claim from a claimant, s/he requests the Report from the County department(s) at issue and the Report is provided to the County Claims and Insurance Manager and County Counsel; when defense counsel is retained, the Report is provided to defense counsel. The Report is drafted specifically at the request of the County's Claims and Insurance Manager when a government claim is received, signaling impending litigation, and is prepared to provide impressions and opinions pertaining to claims handling and assessment of liability exposure ... The Report is considered confidential by the County, intended to be protected by the attorney work product and attorney-client privilege, and as a document prepared in anticipation of litigation in response to the filing of a government claim. The Report is created in anticipation of litigation and intended to assist County Counsel, County Claims and Insurance Manager and retained defense counsel to evaluate the government claim for purposes of prelitigation claims handling and litigation strategy.

(ECF No. 36 at 19, 21 (citing Watson Decl. ¶¶ 3–4, ECF No. 36-5).) Defendant maintains the report was "designed to gather information from the County department in order [to] ascertain facts regarding the underlying incident at issue in the government claim and provide mental impressions and opinions to assist in the County's claims handling strategy." (ECF No. 36 at 23.) Thus, Defendant argues the report, which was prepared "by a party or his representative in anticipation of litigation" is protected from discovery by the work product doctrine. (Id. at 22–23.)

At the hearing on the motion, Defendant reiterated its position that the report was prepared with the single purpose of transmitting mental impressions and opinions regarding Plaintiff's government claim to County Counsel, the County Claims and Insurance Manager, and the County's outside defense counsel, once they were retained. Defendant explained that the County works very closely with County Counsel and will request the report be completed in order to go to County Counsel and the risk manager. Defendant argued the at-issue report is the first document provided to County Counsel and, as such, is distinguishable from an IA investigation. Finally, Defendant argued Plaintiffs' caselaw is not controlling and the rulings therein should not be adopted here.

Plaintiff seeks sanctions due to County's delay in producing such declarations with further information (plainly not included in the privilege log) as to the context and basis for invoking the work product privilege.

1        **(b)     Analysis**

2        As an initial matter, the Court addresses the case law heavily relied upon by the parties.

3   Neither party's cases are fully persuasive and the Court declines to adopt a bright line rule that a

4   Government claims investigation report does or does not always fall under the protections of the

5   work product doctrine.   For example, in <u>Sanchez v. County of Sacramento</u>, the plaintiff

6   requested production of documents "relating to the investigation of Plaintiff's government claim

7   … including: interviews conducted, statements received, correspondence sent or received,

8   reports and memos prepared."   <u>Sanchez v. Cnty. of Sacramento</u>, No. 2:19-cv-01545-MCE-AC,

9   2022 WL 866057, at *4 (E.D. Cal. Mar. 23, 2022) (internal quotations and brackets omitted).

10  The judge found the county defendant failed to make a showing sufficient to establish that any

11  documents were work product protected because "it is clear that the documents at issue would

12  have been created whether or not this civil action was brought," and were thus prepared in the

13  ordinary course of business, rather than "because of" the litigation.   <u>Id.</u> at *5.   On motion for

14  reconsideration,[8] the district judge affirmed the magistrate judge's ruling, finding no clear error

15  in the decision, because the "documents were made in response to and during the investigation of

16  Plaintiff's government claim and … were made before that claim had been denied or Plaintiff

17  filed this lawsuit."   <u>Id.</u> (citing <u>Mollica</u>, 2022 WL 317004 ("Here, the nature and totality of the

18  surrounding circumstances show the documents were not prepared with an eye toward litigation.

19  The County was investigating a claim in the ordinary course of its business.   No dispute had

20  arisen.")).   In <u>Mollica</u>, the district judge also affirmed the magistrate judge's order overruling a

21  work product objection, on the basis that the county defendant in that case did not show the at-

22  issue report was prepared in anticipation of litigation, and was therefore not protected by the

23  work product doctrine.   <u>Mollica</u>, 2022 WL 317004, at *1.   In <u>Mollica</u>, the plaintiff sought

24  production of a document titled "Civil Claim Review Mollica …," which the county defendant's

---

25  [8] Pursuant to Local Rule 303(f), on motion for reconsideration, a district judge shall review a magistrate judge's
26  ruling under the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A); <u>see also</u> Fed.
    R. Civ. P. 72(a).  Under this standard, if the district judge believes the conclusions reached by the magistrate judge
27  were at least plausible after considering the record in its entirety, she will not reverse, even if convinced that she
    would have weighed the evidence differently.  <u>Phoenix Eng. & Supply Inc. v. Univ. Elec. Co., Inc.</u>, 104 F.3d 1137,
28  1141 (9th Cir. 1997).  Thus, the general determination by a district judge, that the magistrate judge did not clearly
    err in a discovery ruling, without more, cannot be deemed persuasive.

privilege log described as an "inter-department correspondence prepared in the anticipation of litigation, and made in confidence without disclosure to outside parties, regarding the summary of the investigation into [the plaintiff's] citizen complaint." <u>Mollica</u>, 2022 WL 317004, at *1 (internal brackets and quotations omitted).  In opposition to the motion to compel, the county defendant supplemented its privilege log with a "late-filed" supporting declaration. <u>Id.</u> at *3.

While <u>Sanchez</u> considered the discoverability of a government claims report, it does not provide sufficient factual information for this Court to conclude it is analogous to the totality of circumstances of the instant case.  In <u>Mollica,</u> the at-issue document was not a government claims report, but a report from a parallel investigation process completed in response to the plaintiff's citizen's complaint, which the court distinguished from the procedures for the government claims investigation.  <u>Mollica</u>, 2022 WL 317004, at *4–5.  Further, neither <u>Sanchez</u> nor <u>Mollica</u> is an excessive force case.  Moreover, it is not clear whether Sacramento County follows the same procedures with respect to the handling of government claims reports as detailed in Stanislaus County's declaration for the instant matter.  Nor do the opinions detail the parties' supporting evidence for the Court to conclude the cases are sufficiently analogous on this particular discovery issue so as to be persuasive.

The Court similarly finds Defendants' caselaw not entirely persuasive.  <u>Admiral Insurance Company</u> barely discusses the work product doctrine and does not apply it to any specific discovery requests.  <u>See Admiral Ins. Co.</u>, 881 F.2d at 1494.  <u>Reavis v. Metro. Prop. & Liab. Ins. Co.</u> is a California insurance claim case arising from a car accident and personal injuries.  <u>See Reavis</u>, 117 F.R.D. 160, 161 (S.D. Cal. 1987) (ordering disclosure of work product because the suit was based on claims alleging mishandling of the insurance claim itself and the files contained information that was highly probative to the plaintiff's claim).  At most, <u>Reavis</u> appears relevant here in that the court noted submitting a claim to the defendant insurance company did not necessarily transform all statements and information obtained by the defendant's agents into protected documents prepared in anticipation of litigation, as "such a broad interpretation [of Rule 26(b)(3)] would be unreasonable; and also, the fact that the defendant conducts an investigation into claims against its insured as a matter of routine and not

1   at the direction of counsel does not necessarily mean that the investigation is not being

2   conducted in anticipation of litigation, "*if other factors are present*."  Id. at 162–63 (emphasis

3   added).  That is, the court acknowledged that "[c]ourts must look to the facts in each particular

4   case."  Id. at 163.  The Court agrees with this statement; all other aspects of Reavis are

5   inapposite.

6          Garcia v. City of Imperial (Imperial), at least, is an excessive force case.  Imperial, 270

7   F.R.D. 566 (S.D. Cal. 2010), obj. sustained in part and overruled in part, No. 08cv2357

8   BTM(PCL), 2010 WL 3719081 (S.D. Cal. Sept. 17, 2010) (plaintiff shot in the back with a Taser

9   while being detained for a minor graffiti charge).  Like Reavis, the Imperial court held that

10  claims investigation documents are not automatically protected under the work product doctrine

11  as presumptively prepared in anticipation of litigation, as not every claim results in a lawsuit, but

12  it also does not mean the investigation is not being conducted "in anticipation of litigation."

13  Imperial, 270 F.R.D. at 572.  Interesting, County argues Imperial supports its position because

14  "the district court found that the plaintiff was not entitled to discovery of documents reflecting

15  investigations conducted by the defendant's insurer, which were protected by [the] work product

16  doctrine."  (ECF No. 36 at 23.)  This is inaccurate.[9]  In fact, the magistrate judge concluded the

17  report was protected because the defendant "believed litigation was imminent."  Imperial, 270

18  F.R.D. at 571.  On reconsideration, the district judge sustained the plaintiff's objections and

19  reversed the magistrate judge on this very ruling, finding the defendants had not adequately

20  shown the at-issue investigations were prepared in anticipation of litigation; that the "mere fact

21  that a plaintiff has filed an administrative claim is not enough to render subsequent investigations

22  by the defendant's insurance adjustor 'in anticipation of litigation' "; and that "[o]ther

23  circumstances indicating that the claims adjuster's actions were taken with an eye toward

24  litigation must be present."  Imperial, 2010 WL 3719081, at *2.  Specifically, the district judge

25  found the report's first sentence "This report and our investigation are done in anticipation of

26  litigation for ultimate transmittal to defense counsel and with the intent that it remains

27

28  [9] County's misinterpretation of this case is not well-taken.

confidential" was form language and therefore not determinative of whether the work product doctrine applied.  Id.  The district judge also rejected the work product claim because the defendants were not represented by an attorney at the time the reports were prepared and had produced "no evidence of events causing [them] to anticipate imminent litigation."  Id.  Thus, the district judge concluded that the reports were prepared in the ordinary course of business and were discoverable.  Id.  In any event, Imperial may be slightly more persuasive than any other caselaw advanced by the parties; however, it is still not directly applicable due to the potentially differing factual basis.

Turning to the totality of the circumstances of this case, the Court first agrees with Plaintiff that the privilege log, on its face, does not demonstrate the report is attorney work product.  First, the privilege log indicates the report was prepared by the Sheriff's Department (Lt. Brandon Kiely) and not an attorney.  (See ECF No. 36 at 19, 21, 23.)  While work product protections can extend to investigators or agents working for attorneys, it must still be established that the documents were created in anticipation of litigation, Sanmina Corp., 968 F.3d at 1121, and there is no indication in the privilege log that such occurred here.  County does not provide even a minimum amount of information about the content of the report to substantiate its claim of privilege.  Burlington, 408 F.3d at 1148; see also Mollica, 2022 WL 317004, at *3; Morgan Hill, 2017 WL 445722, at *9.  Plaintiff's argument that neither County Counsel nor outside counsel is listed as a recipient of the report in either the original or amended privilege log is well-taken.  As such, the privilege log on its face is deficient.

The Court also considers County's untimely declaration submitted in opposition to the instant motion to compel (described extensively, supra).[10]  However, as the Court noted with respect to County's official information objection, the declaration appears to describe a broad (and at times, conclusory) general practice with respect to creating investigation reports following submission of a government claim; it asserts no information specific to the instant

---

[10] Plaintiff argues an independent basis for rejecting the declaration, and County's arguments supported therein, is that it was untimely submitted.  While the Court is sympathetic to Plaintiff's frustration with County's failure to produce such information with the initial or amended privilege log, and possibly during their meet and confer conference as well, the Count concludes the untimeliness of the declaration goes to the issue of sanctions, not the sufficiency of County's effort to invoke the privilege.

claim report, it does not aver such procedures were followed with respect to the at-issue report, and it presents no other evidence of events supporting County's contention that the report was prepared in anticipation of imminent litigation, so as to distinguish the instant claims investigation report from one prepared in the normal course of business.  (See generally Watson Decl., ECF No. 36-5); see also Imperial, 2010 WL 3719081, at *2.  To the contrary, and similar to the situation in Imperial, the evidence submitted by County demonstrates the report was requested by the Claims and Insurance Manager, and was not prepared pursuant to any instructions from County Counsel, who purportedly received the report at an unknown date (County Counsel is not a listed recipient of the report on County's privilege log); further, outside counsel was not retained until March 2022, and did not receive the August 3, 2019 report until that time (though, this is also not reflected in the original or amended privilege log).  (See Hewitt Decl. ¶ 9;) see Imperial, 2010 WL 3719081, at *2.  County's arguments with respect to the report also appear inconsistent: while at one point, County argues the report was prepared with the "single purpose" of transmitting mental impressions and opinions regarding Plaintiff's government claim to County Counsel, it also concedes the report was "designed to gather information from the County department in order [to] ascertain facts regarding the underlying incident at issue in the government claim …."  (ECF No. 36 at 23.)  In addition, the Court notes Plaintiff has argued he seeks only the underlying factual findings and evidence pertaining to the report, and not any conclusions regarding potential legal liability; whereas, County has not clarified, and the declaration is also silent as to whether, any information exists in the report that constitutes such underlying evidence distinguishable from any attorney's "mental impressions and opinions," and whether it is possible to produce a redacted version of the at-issue report, or to produce evidence attached to the report but not the report itself.

Thus, at the conclusion of oral argument, the Court was satisfied an "adequate factual basis was shown to support a good faith belief by a reasonable person" that *in camera* review was warranted.  See U.S. v. Zolin, 491 U.S. 554, 572 (1989) (re: determination of crime fraud exception, "the decision whether to engage in *in camera* review rests in the sound discretion of the district court.  The court should make that decision in light of the facts and circumstances of

1    the particular case ….").  Accordingly, the Court *sua sponte* ordered County to provide the at-

2    issue report for an *in camera* review.  (See ECF No. 38.)

3         **c.    Ruling Following In Camera Review of County Claims Report**

4         The Court has reviewed the report and finds that the information in the documents is

5    relevant to Plaintiff's claims.  The Court does not discern any attorney's mental impressions and

6    opinions, or other attorney involvement, apart from the first sentence of the report, which claims

7    the preparer of the report (Lt. Kiely) was directed to prepare the investigative report by Lt.

8    LaBarbera, "who was advised by County Counsel to prepare this report in anticipation of

9    litigation."  This one sentence, however, is conclusory and insufficient to invoke work product

10   protections; there is no indication in the report that counsel provided any instructions to the

11   lieutenant to carry out his investigation in any particular manner.  Thus, the majority of the

12   report, which consists of findings related to the underlying claim, appears indistinguishable from

13   an investigation report prepared in the normal course of business.[11]  The only exceptions to this

14   finding concern portions of the synopsis, and the section titled "Findings/Conclusion," which are

15   entitled to work product protection.

16        Accordingly, County is directed to produce the report to Plaintiff, pursuant to the

17   protective order already in effect in this case (ECF No. 18).  The information produced shall be

18   redacted to omit the last sentence of the "Synopsis" that summarizes the preparer's conclusion,

19   and the entire section titled "Findings/Conclusions."

20        3.    RPD No. 4: Internal Affairs Investigations

21        Plaintiff's RPD No. 4 seeks:

22             Any and all DOCUMENTS that comprise or are part of the records
               of the Stanislaus Sheriff's Department, or part of the personnel file,
23             employment records, and/or complaint/disciplinary history of
               EACH INVOLVED OFFICER, at any time up to the present,
24             including but not limited to: (a) complete complaint and
               disciplinary    DOCUMENTATION;      (b)    complete
25             DOCUMENTATION regarding any and all citizen, law-
               enforcement and/or other complaints against each INVOLVED
26

27   _____
     [11] The Court also notes one section of the report, titled "Attached Documents," identifies nine separate attachments
     related to the investigation.  These attachments were not submitted to the Court with the report for *in camera*
28   review; however, the Court presumes County has already produced the identified documents to Plaintiff in response
     to his previous discovery requests.

1
2

> OFFICER, including all records of any complaints/charges of misconduct, investigation, conclusions, final disposition, review, and any resulting discipline, retraining, or other action taken.

3   (ECF No. 36 at 24.)   In response, County asserted the following amended response and

4   objections:

5
6
7
8
9
10
11

> Objection.  Responding party objects to this request on the basis that [1] it is not relevant to any party's claim or defense and [2] not proportional to the needs of the case as required be Fed. R. Civ. P. 26(b)(1).  In addition, it is [3] vague and [4] ambiguous as to "complaint/disciplinary history," [5] overbroad as to time, and [6] compound.  Further, [7] the request calls for disclosure of confidential information protected from disclosure by Official Information Privilege; Sanchez v. City of Santa Ana, 936 F.2d 1027 (9th Cir. 1990); [8] Federal and Cal. Constitutional Right to Privacy; [9] Cal. Pen. Code § 832.7, Cal. Evid. Code §§ 1043, 1045.  Subject to and without waiving the foregoing objections, responding party responds as follows:

12

> See attached Amended Privilege Log.

13
14

> Responding party provides the following additional documents subject to the stipulated protective order agreed upon by the parties on the enclosed flash drive contained within the following folder: RPD No. 4.

15   (Id. at 25.)  The amended privilege log indicates items 1–5, and 7–15 are responsive to RPD No.

16   4.  (ECF No. 36-5 at 8–23.)  Items 1–5 are identified as the personnel and background files of the

17   Officer Defendants (discussed *infra* at RPD No. 6).  Items 7–15 are identified as Internal Affairs

18   Investigations for incidents that pre-date and post-date the incident giving rise to this action.

19       With respect to this RPD, Plaintiff seeks production of the IA investigation reports

20   identified in the amended privilege log (items 7–15).  (ECF No. 36 at 33–40.)  In opposition to

21   the motion to compel, County submitted a declaration providing additional information with

22   respect to the four at-issue IA investigation reports (Hewitt Decl. ¶ 5):

23   IA No. CC #15–15 (Amended Privilege Log Item 9)

24   Privilege log item 9 is identified as IA No. CC #15–15, dated August 15, 2015,

25   regarding Defendant Deputy Jessue Corral.  (ECF No. 36 at 38.)  County's

26   declaration indicates the subject of the IA investigation was "discourteous

27   treatment in use of force during arrest (non-K9)," and the outcome of the charge

28   was "unfounded."

1    IA No. CC #20–24 (Amended Privilege Log Item 10)

2    Privilege log item 10 is identified as IA No. CC #20–24, dated July 30, 2020,

3    regarding Defendant Sergeant Wade Carr.  (ECF No. 36 at 38.)   County's

4    declaration indicates the subject of the IA investigation was "use of force (non-

5    K9) during domestic violence situation," and the outcome of the charge was

6    "exonerated."

7    IA No. CC #15–80 (Amended Privilege Log Item 12)

8    Privilege log item 12 is identified as IA No. CC #15–80, dated September 27,

9    2015, regarding Defendant Deputy Wade Carr.  (ECF No. 36 at 38.)   County's

10    declaration indicates the subject of the IA investigation was "off duty conduct

11    unbecoming," and the outcome of the charge was a "counseling memo."

12    IA No. CC #17–78 (Amended Privilege Log Item 14)

13    Privilege log item 14 is identified as IA No. CC #17–78, dated November 10,

14    2017, regarding Defendant Deputy Jessue Corral.  (ECF No. 36 at 38.)   County's

15    declaration indicates the subject of the IA investigation was "use of force while

16    assisting primary officer (non-K9)," and the outcome of the charge was

17    "exonerated."

18    This information is also replicated in the joint statement.  (ECF No. 36 at 38.)   At the

19   hearing, Plaintiff confirmed he has narrowed his request to seek only the IA reports identified in

20   the amended privilege log at items 9 (IA No. CC #15–15), 10 (IA No. CC #20–24), 12 (IA No.

21   CC #15–80), and 14 (IA No. CC #17–78) (pursuant to the amended privilege log as reflected in

22   the joint statement at ECF No. 36 at 38.)  However, he seeks sanctions due to the untimeliness of

23   County's declaration.

24        **a.    Analysis and Rulings on Objections**

25        i.    Sufficiency of Privilege Log

26        As an initial matter, the Court notes the amended privilege log again appears deficient on

27   its face.  With respect to each of the IA report entries, the amended privilege log indicates the

28   documents were withheld due to a string cite of privilege-objections—"Not relevant under Fed.

R. Civ. P. 26(b)(1); Official Information privilege; Federal and Cal. Constitutional Right to Privacy; Cal. Pen. Code § 832.7; Evid. Code §§ 1043, 1045"—and no further description of the reports or County's basis for asserting each privilege.  (See ECF No. 36-4 at 20–24.)  As the Court has ruled with respect to the prior discovery items, such a description is insufficient for Plaintiff and the court to evaluate whether each of the withheld documents is privileged. Burlington, 408 F.3d at 1148; Bruno, 2019 WL 633454, at *4; Mollica, 2022 WL 317004, at *3; Morgan Hill, 2017 WL 445722, at *9.

Indeed, County appears to concede as much, by submitting a declaration containing a further amended privilege log with respect to the portions identifying the IA reports.  This partial amended privilege log does appear on its face to provide better information for Plaintiff and the Court to assess the claim of privilege (indeed, upon receipt of this further amended log, Plaintiff narrowed his request from seeking all nine IA reports to the four identified herein); however, it should not be provided to Plaintiff piecemeal, but properly included in an amended privilege log.

ii.     Boilerplate and Conceded Objections, [3], [4], [5], [6], [7], [8], [9]

The Court notes objections it has identified as [3]–[6] and [8]–[9] (vague, ambiguous, overbroad, compound, privacy rights, and state statutes) are asserted in fairly short thrift in the amended response, and in string cite fashion on the privilege log, with no further explanation. Furthermore, County has not substantively addressed any of these objections in any manner on the record, therefore, the Court also deems the argument conceded.  Tatum, 2007 WL 419463, at *3.  Accordingly, and for the reasons previously discussed at section III(A)(2) of this order, these objections are overruled.

The Court additionally notes County fails to sufficiently raise the official information privilege objection (identified by the Court as objection [7]) in light of the aforementioned deficiencies with respect to the untimely Watson affidavit, as previously discussed with respect to County's assertion of the privilege for purposes of withholding the County claims report. County has declined to substantively address this objection as well, and the Court therefore also deems the argument conceded.  Accordingly, Objection [7] is also overruled.

///

iii.     Relevance, Objection [1]

In general, Plaintiff argues the IA investigations of the Defendant Officers should be produced because they may be relevant to credibility, intent, and punitive damages with respect to Plaintiff's excessive force and Bane Act claims.  (ECF No. 36 at 30–31).  Plaintiff also argues "complaints" against the Defendant officers are relevant because they may show "the character or proclivity of [the] officers toward violent behavior or possible bias."  (Id. at 30.)  Plaintiff maintains this relevance finding applies to both prior and subsequent acts to the incident.  Plaintiff further argues specific acts of other misconduct may be introduced as extrinsic evidence under Rule 404(b) to prove wrongful intent, motive, or pattern of relevant conduct, as well as an "aggravated state of mind," and are therefore relevant under that basis as well.  (Id. at 27.)  Plaintiff also argues the IA investigation reports are relevant to show Defendant County had a policy of not properly investigating and disciplining excessive force incidents, as well as notice to the employer, ratification by the employer and motive of the officers, which is also relevant to Plaintiff's Monell claim.  (Id. at 32.)

More specifically, Plaintiff argues the IA reports identified at items 9, 10, and 14 are relevant because they pertain to investigations into excessive force incidents in which the Defendant Officers were directly involved.  (Id. at 33–34.)  As to item 12, which concerns "off duty conduct unbecoming," Plaintiff argues that, while it cannot be ascertained whether the "conduct" may related to force, it is nonetheless relevant to Defendant Carr's credibility, motive, and patterns of behavior.  (Id. at 34.)

County appears to concede that evidence that tends to support Plaintiff's Monell claims or demonstrate the proclivities or motivations of the officers is, indeed, relevant; County merely argues Plaintiff fails to meet the relevancy standard because he has not sufficiently tailored the scope of his requests to seek substantially similar incidents.  (Id. at 36.)  But this argument goes rather to the proportionality issue.

This Court has previously held that prior complaints made against a defendant of excessive force or other claims of misconduct are discoverable when sufficiently similar to the claims brought in the instant suit.  Centeno, 2016 WL 7491634, at *7–8, 15–17 (E.D. Cal. Dec.

29, 2016).  Further, this Court has held that information regarding an officer's other incidents that are related to the subject matter of the instant incident are also relevant to credibility, impeaching, or cross-examining a witness at trial.  Id. (citing Renshaw v. Ravert, 82 F.R.D. 361, 363 (E.D. Pa. 1979).  As such, the Court finds Plaintiff has established the threshold requirement to show the four at-issue IA reports for the Defendant officers are relevant to the instant matter.

    iv.  Proportionality, Objection [2]

    Plaintiff argues his request is proportional to claims, and that producing the at-issue IA reports would not impose an undue burden on County.  (ECF No. 36 at 32.)  The Court agrees. Plaintiff has significantly narrowed the scope of his original discovery request, in that he only currently seeks production of four IA reports.  These reports have been identified as relating to excessive force and misconduct and therefore appear relevant.  County argues that the requested reports are still not relevant or proportional to the needs of this case because none of the excessive force reports involve use of a K9.  The Court finds this proposed scope of proportionality is too narrow in light of the broad discoverability requirements of Rule 26(b)(1). Furthermore, this Court previously defined the parameters of "sufficiently similar" IA reports concerning use of force based on the degree of force being either lethal or non-lethal, and finds this distinction is appropriate for the instant matter.  Centeno, 2016 WL 7491634, at *7, 9–10. Here, the IA reports at log items 9, 10, and 14 do not appear to involve lethal force; as such, the request for these reports is proportional to Plaintiff's claim of excessive force concerning the use of a K9.  County's argument that IA report at log item 14 is beyond the scope because it pertains to a use of force investigation in which Defendant Corral was merely "assisting" the primary officer is also unavailing.  As Plaintiff correctly notes, an excessive force claim may be premised upon an integral participant or failure to intervene theory.  See Blankenhorn v. City of Orange, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (integral participation theory); U.S. v. Koon, 34 F.3d 1416, 1447 (9th Cir. 1994), aff'd in part, rev'd in part on other grounds, 518 U.S. 81 (1996) (failure to intervene theory).

    Furthermore, due to the ongoing deficiencies in the partial second amended privilege log advanced in County's declaration, the Court cannot definitively ascertain the extent of Corral's

1  involvement in the use of force at item 14, or whether the IA report involving "misconduct" at
2  item 12 is sufficiently proportional.

3      At the hearing, the Court concluded Plaintiff had advanced an adequate factual basis to
4  support a good faith belief that *in camera* review was warranted.  Accordingly, the Court ordered
5  County to submit the at-issue Internal Affairs investigation reports for *in camera* review.  See
6  Zolin, 491 U.S. at 572.  (See ECF No. 38.)

7          **b.      Ruling Following In Camera Review of IA Investigation Reports**

8          i.      IA No. CC #15-15 (item 9)

9      The Court has reviewed the IA investigation report CC #15-15 (unfounded claim of
10 "discourteous treatment in use of force during arrest (non-K9)" regarding Defendant Corral), and
11 is unable to divine any relevance it may have to this action.

12     Accordingly, the Court finds no basis for requiring County to disclose these records to
13 Plaintiff.

14         ii.     IA No. CC#20-24 (item 10)

15     The Court has reviewed the IA investigation report CC #20-24 (exonerated charge of
16 "use of force (non-K9) during domestic violence situation" concerning Defendant Carr), and is
17 unable to divine any relevance it may have to this action.

18     Accordingly, the Court finds no basis for requiring County to disclose these records to
19 Plaintiff.

20         iii.    IA No. CC#15-80 (item 12)

21     The Court has reviewed the IA investigation report CC #15-80 (charge of "off duty
22 conduct unbecoming" concerning Defendant Carr, for which a counseling memo was issued),
23 and is unable to divine any relevance it may have to this action.

24     Accordingly, the Court finds no basis for requiring County to disclose these records to
25 Plaintiff.

26         iv.     IA No. CC#17-78 (item 14)

27     The Court has reviewed the IA investigation report CC #17-78 (exoneration from charge
28 of "use of force while assisting primary officer (non-K9)" concerning Defendant Corral), and is

46

1  unable to divine any relevance it may have to this action.

2      Accordingly, the Court finds no basis for requiring County to disclose these records to

3  Plaintiff.

4      4.    RPD No. 6: Personnel Files

5      RPD No. 6 seeks "Any and all DOCUMENTS concerning the hiring, appointment, and

6  promotion of each INVOLVED OFFICER, including complete documentation of any

7  investigation into his background and fitness to be a law-enforcement officer." (ECF No. 36 at

8  40.) County provided the following amended responses and objections:

9
           Objection.  Responding party objects to this request on the basis
10         that [1] the burden of responding is not proportional to the needs of
           the case and that it [2] lacks relevance under Fed. R. Civ. P.
11         26(b)(1).  The request as phrased [3] violates the attorney-client
           communications privilege and the [4] attorney work product
12         doctrine.  The responding party further objects on the basis that the
           request may call for the disclosure of information subject to the [5]
13         attorney-client privilege and/or [6] attorney work product doctrine
           in violation of Fed. R. Civ. P. 26(b)(3)(A).  Further, the request
14         calls for disclosure of confidential information protected from
           disclosure by [7] Official Information Privilege; Sanchez v. City of
15         Santa Ana, 936 F.2d 1027 (9th Cir. 1990); [8] Federal and Cal.
           Constitutional Right to Privacy; [9] Cal. Pen. Code § 832.7, Cal.
16         Evid. Code §§ 1043,1045.  Subject to and without waiving the
           foregoing objections, responding party responds as follows:

17         See attached Amended Privilege Log.

18         Responding party provides the following additional documents
           subject to the stipulated protective order agreed upon by the parties
19         on the enclosed flash drive contained within the following folder:
           RPD No. 6
20

21  (Id. at 41.)  The amended privilege log indicates items 1–5 are responsive to Plaintiff's RPD No.

22  6.  (ECF No. 36-4 at 8–20.)  As previously noted, items 1–5 are identified as the personnel and

23  background files of the Officer Defendants.

24      **a.    Parties' Arguments**

25      The only substantive arguments advanced by Plaintiff are with respect to relevancy and

26  proportionality.  County addresses relevancy/proportionality, as well as the officers' privacy

27  rights.  The Court shall address these arguments in turn.

28  ///

47

**b.**   **Analysis and Rulings**

i.   Boilerplate and Conceded Objections, [3], [4], [5], [6], [7], [9]

As an initial matter, the Court notes the objections it has identified as [3]–[7] and [9] (attorney-client communications privilege, attorney work product doctrine, and state statutes) are asserted in fairly short thrift in the amended response, and in string cite fashion on the privilege log, with no further explanation.  As previously discussed, the Ninth Circuit has held that objections asserted in such manner are considered boilerplate and therefore insufficient to assert a privilege.  Burlington, 408 F.3d at 1149.  Furthermore, County has not substantively addressed any of these objections in any manner on the record, therefore, the Court also deems the argument conceded.   Tatum, 2007 WL 419463, at *3.   Accordingly, and for the reasons previously discussed in this order, these objections are overruled.

ii.   Privacy Rights

County argues much of the information Plaintiff's RPD No. 6 seeks—including information about the officers' family and history, social security, fingerprints, and tax returns—which are not only irrelevant to the instant case but would also constitute a gross and unnecessary infringement of the officers' privacy.  Plaintiff purports to incorporate by reference his arguments to County's privacy objection as previously asserted with respect to his prior discovery requests; he does not further address County's privacy argument with respect to RPD No. 6 in the joint statement or at the hearing.

As the Court previously discussed, courts balance the privacy rights of law enforcement records against the great weight afforded to federal law in civil rights cases against law enforcement.  Kelly, 114 F.R.D. at 656; Soto, 162 F.R.D. at 616.  Generally, courts find that the privacy interests of the officer in his personnel file do not outweigh the civil rights plaintiff's need for the documents.  Soto, 162 F.R.D. at 617.  Furthermore, a protective order that is carefully crafted can minimize the impact of the disclosure.  Id.; see also Kelly, 114 F.R.D. at 666 (holding "the weight of law enforcement's interest [in preventing disclosure of documents containing personal information] drops dramatically ... when imposes a tightly drawn protective order on the disclosure of such material").

1    Here, the Court finds the stipulated protective order previously entered in this case (ECF
2    No. 18) will adequately protect those officers' and other individuals' privacy interests;
3    Defendants may also elect to redact from files the officers' and individuals' sensitive
4    information.  Balancing the interests represented here, the Court finds that Plaintiff's need for the
5    records which the Court has found to be discoverable outweighs the Defendant Officers' privacy
6    interest.  Accordingly, the objection is overruled.

7        iii.    Relevance/Proportionality

8        **(a)    Parties' Arguments**

9        Plaintiff argues the requested pre-employment background investigations, pre-
10   employment psychiatric/psychologic screening, application, and background/pre-hiring materials
11   are relevant and discoverable because they are directly relevant to Plaintiff's Monell claims.
12   (ECF No. 36 at 41–42.)  Plaintiff argues pre-employment hiring documents are also relevant "as
13   a potential source for discovering evidence of dishonesty."  (Id. at 42.)  In general, Plaintiff also
14   argues records of training, conduct, performance, evaluation of officer-defendants, and evidence
15   of prior acts of similar misconduct included in personnel files is often found to be relevant in
16   excessive force cases because they go to the issue of credibility, notice to the employer,
17   ratification by the employer and motive of the officers, as well as on the issue of punitive
18   damages, in that the information may lead to evidence of a continuing course of conduct
19   reflecting malicious intent.  (Id. at 26.)

20       In opposition, County argues Plaintiff has not met his burden of establishing it is
21   proportional to the needs of the case.  (Id. at 42.)  County proffers that, after it served initial
22   responses and met and conferred with Plaintiff, it provided additional responsive documents
23   from the Defendant Officers' background and personnel files.  More specifically, County
24   produced "all five officers' personnel files, with limited redactions to protect personal data,
25   which included performance evaluations, applications for employment, commendations, incident
26   reports and similar documents"; moreover, County proffers it previously produced many of the
27   documents maintained in the officers' background files in its amended response to RPD, set one.
28   (Hewitt Decl. ¶ 10.)

49

1        Further, County proffers the only privileged documents it withheld (identified on the
2  amended privilege log) fall into the following categories of documents: tax return information,
3  psychiatric questionnaires and evaluation reports; DMV and DOJ records (including
4  fingerprints); documents containing extensive personal information regarding the officers'
5  background, juvenile history records, family members; credit bureau reports (such as Equifax
6  credit reports), social security cards, birth certificates, driver's licenses, and marriage license;
7  medical examinations; polygraph testing and examination reports; educational transcripts;
8  background check information and reports; selective service documents; and personal
9  automobile insurance information.  (Hewitt Decl. ¶ 10; amended privilege log, items 1–5.)

10       County maintains its amended privilege log sufficiently details a number of items, such
11  as tax return confirmation letters and DMV records, which Plaintiff's overly broad request also
12  seeks but which are not proportional (or relevant) and instead unduly violate the officers' privacy
13  rights.  (ECF No. 36 at 42–43.)  Thus, County argues any possible benefit of the sought-after
14  records is extremely low and greatly outweighed by the intrusiveness of the request of such
15  sensitive, private information regarding the individual Defendant Officers.  (Id. at 43.)

16       At the hearing, Plaintiff narrowed his requests to the pre-hiring screening/background
17  materials, including the psychiatric/psychological examinations and polygraph tests.  Plaintiff
18  argues these documents go to the issues of credibility, honesty, and fitness to be a law
19  enforcement officer and are therefore relevant to Plaintiff's excessive force and Monell failure to
20  screen and wrongful hire claims.  County explained the department holds two files for officers:
21  personnel files, which include information pertaining to promotions, performance evaluations,
22  and commendations—which were produced; and background files.  County represented that all
23  documents from the Defendant Officers' background files that were withheld were identified on
24  the amended privilege log; everything else in the files was produced.  County further objected to
25  Plaintiff's requests for other pre-hiring screening/background materials, on the basis that the
26  request remained impermissibly vague.

27      **(b)**    **Analysis and Ruling**

28       Courts have repeatedly found that police personnel files and documents are relevant and

discoverable in 1983 actions.  See Green v. Baca, 226 F.R.D. 624, 644 (C.D. Cal. 2005), order clarified, No. CV 02-204744MMMMANX, 2005 WL 283361 (C.D. Cal. Jan. 31, 2005). However, Plaintiff has not sufficiently articulated how many of the background documents specifically identified in the amended privilege log are relevant to the instant case.  Plaintiff provides no specific argument, and the Court cannot conclude, that the officers' tax returns, DMV records, high school transcripts, or physical agility entrance exam results, *for example*, are relevant in any way to Plaintiff's excessive force or Monell claims.  Plaintiff's request in this sense is therefore vague and overbroad.

On the other hand, the court concludes the following background investigation documents, as identified on the amended privilege log are relevant in this case:

Defendant Carr's
- Background Investigation Questionnaire dated 03/23/08,
- Background Investigation Questionnaire dated 11.12.05,
- Background Investigation Report Review dated 05.15.08,
- Background Investigation Report Review,
- Personal History Statement 03.23.08,"
- Personal History Statement 11.13.05,
- Pre-Background Interview Questions,
- Pre-Employment Psychological Screening 06.15.08,
- Pre-Employment Psychological Screening,
- Report of Carr's Application for Deputy Sheriff dated 05/13/08 (Background Check),
- Report of Carr's Application for Deputy Sheriff-Coroner (Background Check),
- Sacramento Sheriff Dept. Search Results 11.30.05, and
- Sacramento Sheriff Dept. Search Results 12.21.05,

as identified in the amended privilege log at item 1 (ECF No. 36-4 at 8–10);

Defendant Corral's
- Background Investigation dated 08.22.13,
- DOJ Report dated 09.12.13,
- Personal History Statement,
- Pre-Background Interview Questions,
- Pre-Employment Psych Screening,
- Questionnaire for Law Enforcement Officers, and
- Report of Corral's Application for Employment (Background Check),

as identified in the amended privilege log at item 2 (id. at 10–12);

Defendant Johnson's
- Written Responses to Employment Questions (Background Check),
- Alameda Sheriff Department Response to Request for Records of Johnson,
- Background Investigation,
- DOJ Background Check,

- Personal History Statement,
- Pre-Background Interview Questions (Background Check),
- Pre-Employment Psych Evaluation,
- Report of Johnson, Richard Application (Background Check), and
- Report Post-CVSA Exam of Johnson (Background Check),

as identified in the amended privilege log at item 3 (id. at 12–13);

Defendant Letras's
- Background Investigation Questionnaire,
- DOJ Applicant Clearance,
- Personal History Statement (2),
- Personal History Statement,
- Pre-Employment Psych Screening,
- Background Investigation Report Review April 2005,
- Background Investigation Report Review of Letras,
- Internal Memo re: Letras Application (Background Check),
- Internal Memo re: Letras Application 03.28.05 (Background Check),
- Internal Memo re: Polygraph Exam and Interview,
- Pre-Background Interview Questions, and
- Pre-Employment Psychological Screening,

as identified in the amended privilege log at item 4 (id. at 13–16); and

Defendant Sandoval's
- Applicant Summary sent to Asst. Sheriff (Background Check),
- Applicant Summary sent to Sheriff 11.21.07 (Background Check),
- Application Update 11.21.07 (Background Check),
- Background Investigation Report Questionnaire 1.22.06,
- Background Investigation Report Questionnaire 10.13.11,
- Background Investigation Report Questionnaire,
- Background Investigation Report Review 11.30.07,
- Bureau of Criminal Info and Analysis Report,
- CADOJ Report 10.24.22,
- CADOJ Report,
- Email to Thomas Allen approving applicant (Background Check),
- Internal Memo re: CVSA 10.2.11,
- Internal Memo re: Supplemental Investigation 12.17.07 (Background Check),
- Internal Memo re: Supplemental Investigation 12.26.07 (Background Check),
- Memo re: CVSA Examination,
- Multi-Agency Database Search 2011 (CLIPS),
- Personal History Statement 10.13.11,
- Personal History Statement,
- Pre-Background Interview Questions and needed material,
- Pre-Employment CVSA,
- Pre-Employment Psych Screening 03.03.06,
- Pre-Employment Psych Screening 11.10.11, and
- Pre-Employment Psych Screening,

as identified in the amended privilege log at item 5 (id. at 16–20).  These records are particularly relevant to Plaintiff's claims against County, as they could lead to discovery of information regarding County's pre-hire knowledge of the individual officers' fitness to serve.  See Soto, 162

1  F.R.D. at 614–15 (personnel files "may be relevant on the issues of credibility, notice to the

2  employer, ratification by the employer and motive of the officers").   Plaintiff's <u>Monell</u> claim

3  specifically alleges a failure "to properly hire, train, instruct, monitor, supervise, evaluate,

4  investigate, and discipline" the Defendant Officers.   (ECF No. 15 ¶ 89.)   The officers'

5  employment applications and background investigation records speak directly to this

6  claim.  See <u>T.D.P. v. City of Oakland</u>, No. 16-cv-04132-LB, 2017 WL 3026925, at *3 (N.D. Cal.

7  July 17, 2017) (requiring defendants to produce all documents concerning the "hiring,

8  appointment and promotion" of the defendant officers, finding hiring and appointment records

9  relevant to the plaintiff's <u>Monell</u> claim alleging that the city "failed to properly hire" the

10  defendant officers); <u>Zackery v. Stockton Police Dep't</u>, No. CIV S-05-2315 MCE DAD P, 2007

11  WL 1655634 at *2 (E.D. Cal. Dec 16 2021) (officers' personnel file information found relevant

12  to excessive force case because it may reveal the defendant officers' credibility, motive, and

13  patterns of behavior); <u>Cathey v. City of Vallejo</u>, No. 2:14-cv-01749-JAM-AC, 2016 WL 792783,

14  at *6–7 (E.D. Cal. Mar. 1, 2016) (ordering production of the officer's personnel records

15  including "post profile report" and training records, as relevant to excessive force claims).

16         Further, the Court concludes these background records are proportional to the needs of

17  the case.  The test for proving a <u>Monell</u> claim involves "a rigorous review of an officer's hiring

18  and background investigation records."  <u>Edwards</u>, 2019 WL 3564168, at *3; <u>see also</u> <u>Bd. of</u>

19  <u>Cnty. Com'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 413–15 (1997) (applying the

20  "deliberate indifference" test to a <u>Monell</u> claim for inadequate pre-hire background screening of

21  a single police officer and evaluating the contents of the officer's criminal record); <u>Doggett v.</u>

22  <u>Perez</u>, 348 F. Supp. 2d 1179, 1194–96 (E.D. Wash. 2004) (granting summary judgment to

23  defendant on <u>Monell</u> claim for improper hiring after analyzing in detail the contents of the

24  officer's employment application, personal history statement, and background investigation

25  report).  Given the requirements to establish a <u>Monell</u> claim based on, as here, failure to hire,

26  train, and supervise, Plaintiff has a substantial need for these records, which are exclusively

27  within County's possession and control.   Plaintiff's request for the previously-identified

28  background records are therefore relevant and proportional.  Accordingly, these documents are to

1   be produced pursuant to the protective order already in effect in this case.  See Noble, 2017 WL

2   5665850, at *3, *9–11 (finding defendant officer personnel file records, including employment

3   applications, were relevant and proportional to the needs of the case and ordered records to be

4   produced, subject to a protective order so as to prevent widespread public dissemination and to

5   safeguard law enforcement techniques and procedures) (citing Macias v. City of Clovis, No.

6   1:13-CV-01819-BAM, 2015 WL 7282841 (E.D. Cal. Nov. 18, 2015)).   Further, the information

7   shall be redacted to omit any personal identifying information (such as addresses, contact

8   information, social security number, driver's license number, date of birth, and other personal

9   identifiers), as well as any salary or tax information, physical medical information, and

10  information identifying third parties, including family members.   If additional areas need to be

11  redacted or the Protective Order needs revision in light of the Court's ruling, then the Court will

12  entertain a request from the Defendants with a notice and opportunity for response from

13  Plaintiff.[12]

14       As to the remaining items identified on the amended privilege log, however, Plaintiff

15  presents no argument, in either the moving papers or at the hearing on the motion, for the Court

16  to consider that his request is proportional to the needs of the case.  Centeno, 2016 WL 7491634,

17  at *4; see also In re Bard IVC Filters Prod. Liab. Litig. (Bard), 317 F.R.D. 562, 564 (D. Ariz.

18  2016).  That is, Plaintiff has not set forth any specific contention that he has a substantial need

19  for the withheld documents and that he would incur undue hardship in obtaining substantially

20  equivalent information, Torf, 357 F.3d at 910, but has only asserted, in the broadest of

21  generalities, that the requested materials are relevant to his claims.  See Bard, 317 F.R.D. at 565

22  (quoting Rule 26, Advis. Comm. Notes for 2015 Amends.) ("A party claiming that a request is

23  important to resolve the issues should be able to explain the ways in which the underlying

24  information bears on the issues as that party understands them.  The court's responsibility, using

25  all the information provided by the parties, is to consider these and all the other factors in

26  reaching a case-specific determination of the appropriate scope of discovery.")  Because the

27  _____

28  [12]  This requirement assumes that the parties will have a meaningful meet and confer prior to the request being
    made.

1   discovery request is not relevant or proportional to the needs of the case with respect to these

2   remaining documents, the Court concludes Defendants are not required to produce them.

3          5.      RPD No. 7: Training Documents

4          RPD No. 7 seeks "Any and all DOCUMENTS concerning each INVOLVED

5   OFFICER'S training (at all times)," as related to the following subparts:

6              "(a) Avoiding civil liability; (b) California Penal Code § 148(a)(1);
               (c) "Surround and call out" operations; (d) Transportation of
7              arrestees; (e) Provision of medical care to arrestees; (f) Reasonable
               Suspicion; (g) Probable Cause; (h) Handcuffing; (i) Arrest
8              techniques; (j) Use of Force; (k) Reporting Use of Force; (l) Use of
               K-9s; (m) Incident report writing procedures/requirements; (n)
9              Truthfulness; (o) Discourtesy; (p) Professionalism; (q)Decorum;
               and (r) "The code of silence."
10

11   (ECF No. 36 at 45.)  County provided the following responses and objections:

12             Objection.  Responding party objects to this request on the basis
               that it is [1] overbroad and [2] compound.  Further, the term "code
13             of silence" is [3] vague and [4] ambiguous.  Subject to and without
               waiving the foregoing objections, responding party responds as
14             follows:

15             Responding party will produce all responsive documents. See the
               enclosed flash drive with responsive documents contained within
16             the following folder: RPD No. 7.

17   (Id. (brackets in original).)

18          a.      Parties' Arguments

19          Plaintiff argues that instead of receiving the requested documents, County produced the

20   Stanislaus County Sheriff's Department's Policy Manual; that the training documents that were

21   produced are incomplete; and that when County provided a link for documents, it "confirmed" to

22   Plaintiff that "the Sheriff's Department does NOT keep POST profiles/snapshots of the officers

23   like other agencies may keep."  Plaintiff takes issue with the last response, suggesting County's

24   response was either evasive or misleading, as Plaintiff contends that POST profiles may be

25   accessed online by the Defendant Officers or by the County.  (Id. 45.)

26          County argues no documents were withheld; that the Sheriff's Department Policy Manual

27   addresses many of the listed topics; and that Plaintiff's request should have been more carefully

28   tailored.  Nevertheless, County indicates its intent to produce supplemental responses to this

1  request.  (Id. at 45–46.)

2  **b.      Analysis and Ruling**

3         At the hearing, the parties confirmed County produced supplemental responses prior to

4  the hearing, with respect to certain training materials.   However, still at issue is Plaintiff's

5  request for excessive force training documents that pre-date the incident; Plaintiff represented

6  that he only received the trainings that post-date the incident.  County's initial response was "we

7  produced what we had."   However, given the volume of excessive force cases filed against

8  various counties, County ultimately conceded it seems extremely likely that County has

9  preserved (if only for litigation purposes) prior versions of policies and training manuals,

10 particularly with respect to the area of use of force training.  Indeed, this Court is aware that

11 Stanislaus County has a training center at which relevant documents may likely be found.

12 Moreover, trainings that pre-date the incident are relevant to Plaintiff's claims.  County is

13 therefore ordered to produce such documents.

14        County agreed to conduct a further search for such training documents.  County also

15 represented that the policy manuals that pre-date the incident were produced, but that "training

16 outlines" (which are akin to power point slides used during in-class lectures during the training

17 process) may not have been produced previously; therefore, it would provide supplemental

18 responses.

19        Plaintiff also confirmed he seeks the training documents on the specific topics (a)–(r),

20 and that County's response fails to indicate whether it possesses (and has produced) documents

21 responsive to each sub-category.  On this basis, Plaintiff seeks amended responses.  The Court

22 finds the requested amended responses are warranted.  County shall therefore provide amended

23 responses to RPD No. 7 that expressly address each discrete subpart, (a)–(r), separately.  Further,

24 County shall provide these responses as to each subsection, with respect to each of the Defendant

25 Officers in question, indicating which of the produced trainings each officer received.  County

26 agreed to produce such amended responses.

27        Plaintiff's request, therefore, is granted.  County shall produce amended responses and

28 supplemental productions consistent with this order.

1

2       **B.      Sanctions**

3           If a motion to compel discovery is granted, the Court must order the "party or deponent

4   whose conduct necessitated the motion, the party or attorney advising that conduct, or both to

5   pay the movant's reasonable expenses incurred in making the motion, including attorney's fees"

6   unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure

7   or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection

8   was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed.

9   R. Civ. P. 37(a)(5)(A).  If the motion is denied, the court must "require the movant, the attorney

10  filing the motion, or both to pay the party or deponent who opposed the motion its reasonable

11  expenses incurred in opposing the motion, including attorney's fees," however the court "must

12  not order this payment if the motion was substantially justified or other circumstances make an

13  award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(B).  Where the motion is granted in part and

14  denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable

15  expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

16          Further, if a party fails to obey an order to provide or permit discovery, the court may

17  issue further just orders, which may include: "(i) directing that the matters embraced in the order

18  or other designated facts be taken as established for purposes of the action, as the prevailing

19  party claims; (ii) prohibiting the disobedient party from supporting or opposing designated

20  claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in

21  whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the

22  action or proceeding in whole or in part; (vi) rendering a default judgment against the

23  disobedient party; or (vii) treating as contempt of court the failure to obey any order except an

24  order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A).  "Instead of or

25  in addition to the [other sanctions outlined in the Rule,] the court must order the disobedient

26  party, the attorney advising that party, or both to pay the reasonable expenses, including

27  attorney's fees, caused by the failure, unless the failure was substantially justified or other

28  circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

1       At the hearing and briefly in the joint statement, Plaintiff indicated he seeks reasonable

2  expenses for bringing this motion to compel.  Plaintiff further proffers County's declaration in

3  support of the parties' joint statement included useful information that permitted Plaintiff to

4  narrow the scope of production sought at the hearing, but which was not included in the amended

5  privilege log and only provided on the eve of the parties' deadline to file the joint statement of

6  discovery dispute.  As to this point, County argues the parties agreed to exchange their portions

7  of the joint statement on a certain date and that County did so, in accordance with the parties'

8  agreement.  The Court does not find County's argument fully persuasive, as it essentially

9  concedes it did not provide necessary supplemental information until after Plaintiff was required

10  to file the instant motion to compel.

11       Under Rule 37(a)(5)(C), the Court may apportion the reasonable expenses for a motion to

12  compel that is granted in part and denied in part.  It is undisputed that the information provided

13  by Defendants in the joint statement was not included in the original or amended privilege logs,

14  and apparently was not provided during the parties' meet and confer attempts prior to the filing

15  of this motion to compel.  However, it is equally apparent that Plaintiff's discovery requests,

16  which are extremely broad, general, and often inclusive of multiple subparts, could have

17  contributed to some of County's confusion with respect to what information Plaintiff was

18  seeking and therefore which documents were reasonably responsive to the requests.  In any

19  event, the Court notes this discovery dispute appears to have arisen around August 2021, nearly a

20  year ago, with the production of the initial responses to Plaintiff's RPDs, set one.  It is unclear

21  why the parties delayed until April–July 2022 to meet and confer on these discovery issues.

22  Furthermore, considering the limited nature of the parties' meet and confer efforts—a single

23  substantive attempt to meet and confer on April 22, 2022—the Court is unpersuaded that

24  sanctions are warranted for any party at this time.  Indeed, it is plain from the joint statement that

25  the parties unnecessarily delayed in sharing much information that would have limited the scope

26  of the motion to compel or possibly obviated the necessity for such a motion.

27       Accordingly, Plaintiff's request for reasonable attorneys' fees shall be denied at this time.

28  Nonetheless, the denial is without prejudice to renewal should County's supplemental

1  productions indicated by this order prove deficient.

2                                                              **IV.**

3                                       **CONCLUSION AND ORDER**

4        Based on the foregoing, IT IS HEREBY ORDERED that:

5        1.       Plaintiffs' motion to compel Defendant County of Stanislaus's production of

6                 documents (ECF No. 35), is GRANTED in part and DENIED in part, as follows:

7        2.       Plaintiff's motion as to the emails responsive to RPD No. 1(g), and identified in

8                 the amended privilege log at items 30, 31, and 34, is DENIED;

9        3.       Plaintiff's motion as to the August 3, 2019 County Claim Investigation Report

10               responsive to RPF No. 3, and identified in the amended privilege log at item 6, is

11               GRANTED;

12       4.       Plaintiff's motion as to the Internal Affairs Investigation Reports identified in the

13               amended privilege log in the joint statement as items 9, 10, 12, and 14 (IA Nos.

14               CC #15–15, CC #20–24, CC #15–80, and CC #17–78, respectively) and

15               responsive to RPD No. 4, is DENIED;

16       5.       Plaintiff's motion as to the personnel and background files of the Officer

17               Defendants responsive to RPD No. 6, and identified in the amended privilege log

18               at items 1–5, is GRANTED in part and DENIED in part, as expressly set forth in

19               this order;

20       6.       Plaintiff's motion as to the training documents on specific topics (a)–(r)

21               responsive to RPD No. 7 is GRANTED;

22       7.       Defendant County is ordered to produce amended responses and responsive

23               documents to Plaintiff Jose Garcia's Requests for Production, Set One, pursuant

24               to the protective order already in effect in this case and consistent with this order;

25       8.       Any objections based on privilege shall be accompanied by an amended privilege

26               log, in compliance with the Federal Rules of Civil Procedure;

27       9.       The responses and responsive documents shall be served **within thirty (30) days**

28               of issuance of this order; and

10.     Plaintiff's request for reasonable fees pursuant to Federal Rule of Civil Procedure
37(a)(5)(C) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:    **September 14, 2022**

_____
UNITED STATES MAGISTRATE JUDGE